COOLEY LLP
BENEDICT HUR (224018)
(bhur@cooley.com)
SIMONA AGNOLUCCI (246943)
(sagnolucci@cooley.com)
JOSHUA ANDERSON (312836)
(joshua.anderson@cooley.com)
TIFFANY M. LIN (321472)
(tiffany.lin@cooley.com)
3 Embarcadero Center, 20th Floor
San Francisco, California 94111-4004
Telephone: +1 415 693 2000
Facsimile: +1 415 693 2222

Attorneys for Defendant
SHOPIFY INC.

CONRAD, METLITZKY, KANE LLP
MARK R. CONRAD (255667)
(mconrad@conmetkane.com)
GRACE YANG (286635)
(gyang@conmetkane.com)
WILLIAM J. COOPER (304524)
(wcooper@conmetkane.com)
217 Leidesdorff Street
San Francisco, CA 94111
Telephone: (415) 343-7100
Facsimile: (415) 343-7101

Attorneys for Defendant
BEYOND, INC. DBA OVERSTOCK.COM

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

CONNIE JOHNSON, an individual and on behalf of all others similarly situated,

Plaintiff,

v.

BEYOND, INC., DBA OVERSTOCK.COM, a Delaware corporation; SHOPIFY INC., a Canadian corporation; and DOES 1-100, inclusive,

Defendants.

Case No. 2:25–CV–03327–DJC–CSK

**DEFENDANTS SHOPIFY INC. AND BEYOND, INC. D/B/A OVERSTOCK.COM'S JOINT NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION OR STAY**

| | |
|---|---|
| Date | March 19, 2026 |
| Time | 1:30 PM |
| Department | Courtroom 7 |
| Judge: | Daniel J. Calabretta |
| Trial Date: | none set |
| Action Filed: | August 13, 2025 |

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that on March 19, 2026 at 1:30 pm, before the Honorable Daniel J. Calabretta of the United States District Court for the Eastern District of California in the Sacramento Courthouse, Courtroom 7, 501 I Street, Sacramento, CA 95814, Defendants Shopify, Inc. ("Shopify") and Beyond, Inc. d/b/a Overstock.com ("Overstock") (collectively "Defendants") will, and hereby do, submit their motion to compel arbitration or, in the alternative, for a stay of proceedings.

The motion is based on this notice of motion; the memorandum of points and authorities in support thereof that follows; the accompanying declaration of Krystal Love; the pleadings, records, and papers on file in this action; oral argument of counsel; and any other matters properly before the Court.

Defendants certify compliance with the meet-and-confer requirement prior to filing this motion. On January 14 and 20, 2026, Shopify's counsel emailed counsel for all parties to confer regarding enforcement of the arbitration agreements in this action. On the morning of January 22, 2026, Shopify's counsel met and conferred with Plaintiff's counsel by phone regarding the substance of this motion. Plaintiff's counsel indicated that Plaintiff would oppose the motion.

Dated: January 22, 2026 COOLEY LLP

By: */s/ Benedict Hur*
Benedict Hur

Attorney for Defendant
SHOPIFY INC.

Dated: January 22, 2026

CONRAD, METLITZKY, KANE LLP

By: */s/ Grace Yang* (as authorized on January 22, 2026)

Grace Yang

Attorney for Defendant BEYOND, INC. DBA OVERSTOCK.COM

COOLEY LLP
BENEDICT HUR (224018)
(bhur@cooley.com)
SIMONA AGNOLUCCI (246943)
(sagnolucci@cooley.com)
JOSHUA ANDERSON (312836)
(joshua.anderson@cooley.com)
TIFFANY M. LIN (321472)
(tiffany.lin@cooley.com)
3 Embarcadero Center, 20th Floor
San Francisco, California 94111-4004
Telephone: +1 415 693 2000
Facsimile: +1 415 693 2222

Attorneys for Defendant
SHOPIFY INC.

CONRAD | METLITZKY | KANE LLP
MARK R. CONRAD (255667)
(mconrad@conmetkane.com)
GRACE YANG (286635)
(gyang@conmetkane.com)
WILLIAM J. COOPER (304524)
(wcooper@conmetkane.com)
217 Leidesdorff Street
San Francisco, CA 94111
Telephone: (415) 343-7100
Facsimile: (415) 343-7101

Attorneys for Defendant
BEYOND, INC. DBA OVERSTOCK.COM

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

CONNIE JOHNSON, an individual and on behalf of all others similarly situated,

Plaintiff,

v.

BEYOND, INC., DBA OVERSTOCK.COM, a Delaware corporation; SHOPIFY INC., a Canadian corporation; and DOES 1-100, inclusive,

Defendants.

Case No. 2:25–CV–03327–DJC–CSK

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS SHOPIFY INC. AND BEYOND, INC. D/B/A OVERSTOCK.COM'S JOINT NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION OR STAY**

| | |
|---|---|
| Date | March 19, 2026 |
| Time | 1:30 PM |
| Department | Courtroom 7 |
| Judge: | Daniel J. Calabretta |
| Trial Date: | none set |
| Action Filed: | August 13, 2025 |

## TABLE OF CONTENTS

Page

I. BACKGROUND ..... 2
  A. The Terms of Plaintiff's Arbitration Agreement. ..... 3
  B. Notwithstanding Her Arbitration Agreement, Plaintiff Files Suit. ..... 3
II. ARGUMENT ..... 4
  A. The FAA Governs and Requires Enforcement of the Arbitration Agreement. ..... 4
  B. Plaintiff Agreed to Arbitrate, and the Arbitration Clause Is Enforceable. ..... 5
    1. Plaintiff Agreed to Arbitrate All Claims Arising Out of, or Relating To, Her Access to Overstock's Website ..... 5
    2. The Arbitration Agreement's Delegation Clause Is Enforceable and Requires that an Arbitrator Decide Arbitrability Challenges. ..... 7
      (i) The Delegation Clause Is "Clear and Unmistakable." ..... 8
      (ii) The Delegation Clause Is Not Unconscionable. ..... 9
  C. Plaintiff's Claims Fall Within the Scope of the Arbitration Agreement. ..... 10
  D. Equitable Estoppel Requires Arbitration of the Claims Against Shopify. ..... 12
    1. First Prong: The Claims Against Shopify Are Intertwined with the Overstock Arbitration Agreement. ..... 13
    2. Second Prong: Plaintiff Alleges Interdependent Conduct by Overstock and Shopify. ..... 14
  E. This Action Should Be Stayed Pending Arbitration of Plaintiff's Claims. ..... 17
III. CONCLUSION ..... 19

# TABLE OF AUTHORITIES

Page(s)

## Cases

*Aggarwal v. Coinbase, Inc.*,
685 F.Supp.3d 867 (N.D. Cal. 2023) ....... 9

*AT&T Mobility LLC v. Concepcion*,
563 U.S. 333 (2011) ....... 5

*AT&T Techs., Inc. v. Commc'ns Workers of Am.*,
475 U.S. 643 (1986) ....... 8, 10

*In re BAM Trading Servs. Inc. Sec. Litig.*,
733 F. Supp. 3d 854 (N.D. Cal. 2024) ....... 8

*Bielski v. Coinbase, Inc.*,
87 F.4th 1003 (9th Cir. 2023) ....... 10

*Bischoff v. DirecTV, Inc.*,
180 F. Supp. 2d 1097 (C.D. Cal. 2002) ....... 19

*Boucher v. All. Title Co.*,
127 Cal. App. 4th 262 (2005) ....... 14

*Brennan v. Opus Bank*,
796 F. 3d 1125 (9th Cir. 2015) ....... 8

*Bui v. Northrop Grumman Sys. Corp.*,
No. 15-CV-1397, 2019 WL 13166662 (S.D. Cal. Jan. 29, 2019) ....... 18

*Caremark, LLC v. Chickasaw Nation*,
43 F.4th 1021 (9th Cir. 2022) ....... 8

*Chiron Corp. v. Ortho Diagnostic Sys., Inc.*,
207 F.3d 1126 (9th Cir. 2000) ....... 11

*Donovan v. Coinbase Glob., Inc.*,
649 F.Supp.3d 946 (N.D. Cal. 2023) ....... 9

*Eiess v. USAA Fed. Sav. Bank*,
404 F. Supp. 3d 1240 (N.D. Cal. 2019) ....... 5, 9

*First Options of Chi., Inc. v. Kaplan*,
514 U.S. 938 (1995) ....... 5

*Flores v. Coinbase, Inc.*,
No. CV 22-8274, 2023 WL 3564756 (C.D. Cal. Apr. 6, 2023)....12

*Franklin v. Cmty. Reg'l Med. Ctr.*,
998 F.3d 867 (9th Cir. 2021)....13

*Fteja v. Facebook, Inc.*,
841 F. Supp. 2d 829 (S.D.N.Y. 2012)....7

*GE Energy Power Conversion France SAS, Corp. v. Outokumpu Stainless USA, LLC*,
590 U.S. 432 (2020)....12

*Giuliano v. Inland Empire Pers., Inc.*,
149 Cal. App. 4th 1276 (2007)....5

*Goldman v. KPMG*,
173 Cal. App. 4th 209 (2009)....13, 14, 15, 16

*Harris v. Pac. Gas & Elec. Co.*,
No. 21-CV-04096, 2022 WL 16637987 (N.D. Cal. Nov. 2, 2022)....12

*Henry Schein, Inc. v. Archer & White Sales, Inc.*,
586 U.S. 63 (2019)....10

*Lamps Plus, Inc. v. Varela*,
587 U.S. 176 (2019)....10

*Lincoln v. MX Technologies, Inc.*,
2024 WL 3274831 (E.D. Cal. July 2, 2024)....6

*MacArthur v. San Juan Cnty.*,
416 F. Supp. 2d 1098 (D. Utah June 13, 2005)....10

*Marshall v. Ameriprise Fin. Servs.*,
735 F. Supp. 3d 1229 (E.D. Cal. 2024)....17

*Martinez-Gonzalez v. Elkhorn Packing Co.*,
635 F. Supp. 3d 883 (N.D. Cal. 2022)....13, 15

*Momot v. Mastro*,
652 F.3d 982 (9th Cir. 2011)....8

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
460 U.S. 1 (1983)....5, 10, 17

*Nature's Sunshine Prods., Inc. v. Kumets*,
No. 2:20-CV-658, 2021 WL 1293327 (D. Utah Apr. 7, 2021)....12

*Nguyen v. Barnes & Noble, Inc.*,
763 F.3d 1171 (9th Cir. 2014) ..........5, 7

*Oberstein v. Live Nation Ent., Inc.*,
60 F.4th 505 (9th Cir. 2023) ..........5, 6

*Optimum Prods. v. Home Box Office*,
839 F. App'x 75 (9th Cir. 2020) (mem. op.) ..........5

*Paparazzi, LLC v. Sorenson*,
No. 4:22-CV-00028, 2023 WL 2760593 (D. Utah Apr. 3, 2023) ..........12

*Pizarro v. QuinStreet, Inc.*,
No. 22-cv-02803, 2022 WL 3357838 (N.D. Cal. Aug. 15, 2022) ..........6

*Rent-A-Center, W., Inc. v. Jackson*,
561 U.S. 63 (2010) ..........8

*Russell v. BMW of N. Am., LLC*,
No. 2:22-cv-03299, 2022 WL 18674435 (C.D. Cal. Oct. 14, 2022) ..........13, 15, 17

*Ryan v. Dan's Food Stores, Inc.*,
972 P.2d 395 (Utah 1998) ..........9

*Shivkov v. Artex Risk Sols., Inc.*,
974 F.3d 1051 (9th Cir. 2020) ..........17

*Smith Barney v. Burrow*,
No. CV F 08-0373, 2008 WL 4426805 (E.D. Cal. Sep. 26, 2008) ..........17

*Viking River Cruises, Inc. v. Moriana*,
596 U.S. 639 (2022) ..........5

*Vinagray v. Experian Information Sols.*, Inc.,
No. 20-CV-715, 2021 WL 861606 (E.D.N.Y. Mar. 8, 2021) ..........10

*Wiseley v. Amazon.com, Inc.*,
709 F. App'x 862 (9th Cir. 2017) (mem. op.) ..........5

*Wolf v. Langemeier*,
No. 2:09-CV-03086, 2010 WL 3341823 (E.D. Cal. Aug. 24, 2010) ..........18

**Statutes**

9 U.S.C.
§ 1 *et seq.* ..........4
§ 2 ..........4, 5
§ 3 ..........17

## MEMORANDUM OF POINTS AND AUTHORITIES

Through 30 pages of content and 166 pleading paragraphs, Plaintiff Connie Johnson's three causes of action[1] seek to transform routine internet interactions into a tale of coordinated, nefarious acts by Defendants Bed Bath & Beyond, Inc., d/b/a Overstock.com ("Overstock") and Shopify Inc. ("Shopify"). The Defendants deny the allegations contained in the First Amended Complaint, Dkt. 1-4 (the "FAC"), and look forward to substantively responding in the appropriate forum in due course.

Plaintiff is bound by clear language in Overstock's Terms and Conditions, to which she agreed on two separate occasions in 2024, to arbitrate her claims. Beyond Plaintiff's admission that she visited Overstock's retail website "multiple times, including in 2024 and 2025," FAC ¶ 104, she also subscribed to marketing emails from Overstock—and in doing so, *twice* agreed to conspicuous Terms & Conditions that require resolution of "any disagreement, controversy, or claim" with Overstock via individual arbitration. Declaration of Krystal Love ("Love Decl."), Ex. 2 at 9. The Federal Arbitration Act ("FAA"), and well-established caselaw, require Plaintiff to honor her agreement with Overstock, and this Court should order that this case proceed in that agreed-upon forum.

Plaintiff's agreement via the Terms & Conditions does not only bind her claims against Overstock. The equitable estoppel doctrine similarly requires that Plaintiff arbitrate her claims against Shopify. The FAC's allegations both applicable tests for when a nonsignatory may compel enforcement of an arbitration agreement: (1) the allegations are intimately founded in and intertwined with her agreement with Overstock, or (2) the allegations allege substantially interdependent and concerted conduct by Shopify and Overstock. The very gravamen of Plaintiff's complaint is that Shopify and Overstock worked in concert to collect and misuse data associated with Plaintiff, in violation of privacy statutes, constitutional provisions, and the very Privacy

[1] (1) Violation of the California Invasion of Privacy Act ("CIPA"), (2) violation of the California Computer Data Access and Fraud Act ("CDAFA"), and (3) violation of the California Constitution's guarantee of privacy.

Policy to which Overstock and Plaintiff agreed. Fairness requires that Plaintiff be estopped from repudiating her arbitration agreement, even as she brings claims that center on supposed violations of Overstock's Terms & Conditions.

Accordingly, and for the reasons set forth herein, Defendants respectfully request an order: (i) compelling Plaintiff to individually arbitrate her claims against Defendants in accordance with her arbitration agreement, and (ii) staying this action pending the outcome of that arbitration.

## I. BACKGROUND

Plaintiff alleges that she visited Overstock's website "on her mobile device multiple times, including in 2024 and 2025," to make purchases and browse products. FAC ¶ 104. Overstock's records indicate that in addition to making purchases, Plaintiff affirmatively subscribed to receive emails and a discount from Overstock using two separate email accounts in 2024. Love Decl. ¶¶ 4–9. In doing so, Plaintiff was required to agree to Overstock's Terms and Conditions ("Terms & Conditions") and Privacy Policy. *Id*. ¶¶ 5, 8. Accordingly, when Plaintiff *twice* subscribed her email accounts—on April 10, 2024, and July 4, 2024[2] —she did so by typing her email above a conspicuous acknowledgement stating that "[b]y signing up, you agree to our Terms & Conditions and Privacy Policy." *Id.* Plaintiff was presented the opportunity to view the complete Terms & Conditions, including its arbitration provision, by clicking on the underlined "Terms & Conditions" hyperlink, which navigates to a webpage containing the complete document. *Id.*; *see also id.* at Ex. 2 (complete Terms & Conditions).[3] Notably, the very top of the Terms & Conditions document contains the statement in bold: "PLEASE BE AWARE THAT THESE TERMS INCLUDE A 'DISPUTES' SECTION . . . . THE 'DISPUTES' SECTION INCLUDES AN AGREEMENT . . . THAT ALL DISPUTES BETWEEN

---

[2] On April 10, 2024, Plaintiff used her Gmail address to subscribe to Overstock's emails. Then on July 4, 2024, she used her other email account with Yahoo to subscribe to Overstock's emails. Love Decl. ¶¶ 7, 9.

[3] The first page of the Terms expressly informs readers, in bold and all-capitals text, that they (1) "include[] an agreement to arbitrate," that the Terms "also contain[] a class action" waiver, and that a subscriber may "opt out of the agreement to arbitrate within 30 days[.]" Love Decl., Ex. 2 at 2 (emphasis and capitalization omitted).

YOU AND US WILL BE RESOLVED BY BINDING AND FINAL ARBITRATION." *Id.*, Ex. 2 at 2. And after Plaintiff entered her email and clicked the "sign up" button, the user flow led to a second, confirmatory pop-up with the same notice of agreement and hyperlinked terms conspicuously included. *Id.*, Ex. 1 at 3.

**A. The Terms of Plaintiff's Arbitration Agreement.**

Plaintiff's arbitration agreement requires that "all Disputes" between her and Overstock "be resolved by arbitration under this Arbitration Agreement." Love Decl., Ex. 2 at 10.[4] Arbitration must be administered by National Arbitration & Mediation ("NAM") pursuant to the NAM Comprehensive Dispute Resolution Rules and Procedure in effect at the time of arbitration. *Id.* at 10–11. The agreement also provides the selected arbitrator with "exclusive authority to resolve any Dispute, including, without limitation, disputes regarding the interpretation or application of the Arbitration Agreement or any portion of the Arbitration Agreement[.]" *Id.* at 12. And, the Terms & Conditions require arbitration on an individual basis, and expressly prohibit class actions, representative claims, and non-individualized relief. *Id.* at 10.

Notably, the Terms & Conditions allowed Plaintiff to opt out of the arbitration provision within 30 days by mailing a simple notice to Overstock. Love Decl. at ¶¶ 7, 9, and Ex. 2 at 13. She did not do so. *Id.* ¶¶ 7, 9. Plaintiff accordingly agreed to Overstock's Terms & Conditions, including the arbitration agreement contained therein.

**B. Notwithstanding Her Arbitration Agreement, Plaintiff Files Suit.**

Notwithstanding her agreement to arbitrate, Plaintiff initiated this action in Solano County Superior Court. She alleges that Defendants violated the California Invasion of Privacy Act ("CIPA"), the California Computer Data Access and Fraud Act ("CDAFA"), and the California Constitution's privacy guarantee. Importantly, her causes of action are not unique to either defendant: a substantial portion of the FAC's allegations simultaneously attribute misconduct to both Shopify and Overstock. *See,*

[4] The two exceptions to the "all disputes" requirement, concerning (1) matters within the jurisdiction of a small claims court and (2) equitable relief related to infringement and other misuse of intellectual property rights, are not implicated by Plaintiff's suit. Love Decl., Ex. 2 at 9.

*e.g.*, FAC ¶¶ 8 (alleging that both Shopify and Overstock "indefinitely store the information" collected from customers); 57 (claiming that both Shopify and Overstock fail to "disclose to customers Shopify's role in the transaction,"); 89 (alleging that both Shopify and Overstock share collected data on Overstock's "[w]ebsite with multiple third parties").

Indeed, the intertwined nature of Plaintiff's allegations underscore the relationship between Shopify and Overstock in this action. Shopify, as Plaintiff's Complaint recognizes, provides software and infrastructure services for businesses of all sizes to set up, design, and manage their own online stores. *See* FAC ¶¶ 3, 55. Merchants leverage Shopify's software and services, and in turn, customers visit and make purchases directly from these merchants. *Id.* Defendant Overstock was previously one such merchant, and according to the Complaint, Overstock integrated Shopify's software code into its website at https://www.overstock.com. *See id.* ¶¶ 1–3.

In addition to asserting claims on an individual basis, Plaintiff seeks to represent a statewide class with respect to each claim. FAC ¶¶ 114, 123. She additionally purports to seek restitution, disgorgement, nominal damages, pre- and post-judgment interest, equitable monetary relief, and reasonable attorneys' fees, expenses, and costs. *Id.* ¶ 164 & at p. 30 (Prayer for Relief).

## II. ARGUMENT

### A. The FAA Governs and Requires Enforcement of the Arbitration Agreement.

The Federal Arbitration Act ("FAA") governs any written arbitration agreement in a contract "evidencing a transaction involving commerce[.]" 9 U.S.C. § 2. Here, not only is the arbitration agreement written, it expressly provides that "[t]he Terms evidence a transaction involving interstate commerce; and notwithstanding any other provision herein with respect to the applicable substantive law, the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.*, will govern the interpretation and enforcement of this Arbitration Agreement and any arbitration proceedings." Love Decl., Ex. 2 at 10; *see, e.g., Wiseley*

*v. Amazon.com, Inc.*, 709 F. App'x 862, 865 (9th Cir. 2017) (mem. op.) (affirming motion to compel arbitration pursuant to FAA based on arbitration clause in consumer contract for sale of goods with online retailer); *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 336 (2011) (applying FAA to consumer contract "for the sale and servicing of cellular telephones").

Under the FAA, Plaintiff's arbitration agreement is "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract[.]" 9 U.S.C. § 2. The FAA evidences a strong policy preference in favor of arbitration. *Giuliano v. Inland Empire Pers., Inc.*, 149 Cal. App. 4th 1276, 1285–86 (2007); *Viking River Cruises, Inc. v. Moriana*, 596 U.S. 639, 649 (2022) ("The FAA was enacted in response to judicial hostility to arbitration."). "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration[.]" *Optimum Prods. v. Home Box Office*, 839 F. App'x 75, 77 (9th Cir. 2020) (mem. op.) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983)).

### B. Plaintiff Agreed to Arbitrate, and the Arbitration Clause Is Enforceable.

#### 1. Plaintiff Agreed to Arbitrate All Claims Arising Out of, or Relating To, Her Access to Overstock's Website.

Under California law,[5] a contract is valid if (1) the website provides "reasonably conspicuous notice of the terms," and (2) a user "unambiguously manifests his or her assent," like by "clicking a button." *Oberstein v. Live Nation Ent., Inc.*, 60 F.4th 505, 515 (9th Cir. 2023) (citation omitted).[6] Here, the contract formed when Plaintiff subscribed to Overstock's emails, and her agreement to Overstock's Terms & Conditions

---

[5] While the Terms require application of Utah law, California law applies to the threshold issue of contract formation because Plaintiff is a California resident and the contract was formed based on her use of the site in California. FAC ¶ 14. Applying the choice-of-law provision in Overstock's Terms and Conditions would "presuppose the existence of a formed contract[.]" *Eiess v. USAA Fed. Sav. Bank*, 404 F. Supp. 3d 1240, 1250 n.6 (N.D. Cal. 2019); *see also Nguyen v. Barnes & Noble, Inc.*, 763 F.3d 1171, 1175 (9th Cir. 2014) ("[W]hether the choice of law provision applies depends on whether the parties agreed to be bound by [the defendant's] Terms of Use in the first place.").

[6] "[O]rdinary state-law principles . . . govern the formation of contracts." *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995).

containing the arbitration provision at issue, satisfies these requirements.

*First*, Overstock's email subscription screen provided clear and conspicuous notice of the Terms & Conditions and the Privacy Policy. Plaintiff had to click on a "Sign Up" button, which included text directly underneath that put her on notice that she was thereby agreeing to Overstock's Terms & Conditions. Love Decl., Ex. 1 at 2. The text was black against a light grey background and was comparable in size to the surrounding text. *Id.* The Terms & Conditions themselves were hyperlinked and underlined, making them "reasonably conspicuous." *Oberstein*, 60 F.4th at 515. The user flow was uncluttered, and the notice text was not sandwiched between other attention-grabbing text. Love Decl., Ex. 1 at 2. Further, Plaintiff was presented with the Terms & Conditions twice throughout the user flow, and both occurrences were reasonably conspicuous. *Id.* at 2–3.[7]

A similar interface was found to be sufficiently conspicuous in *Lincoln v. MX Technologies, Inc.*, rendering the terms and conditions enforceable. No. 2:23-cv-00806, 2024 WL 3274831, at *3 (E.D. Cal. July 2, 2024). In *Lincoln*, the plaintiff was prompted by the defendant's website to "click[] on a large blue button labeled 'Get Started.'" *Id.* at *1 (citation omitted). "Immediately beneath that button, clearly displayed in italicized black text of the same size as most other text on the page," users were notified that "By clicking 'Get Started,' you agree to our <u>Terms and Conditions</u>." *Id.* (original emphasis) (citation omitted). The court held that the notice of the terms and conditions was reasonably conspicuous, reasoning that the text was black against a light background, the size of the text was not "considerably smaller" than the surrounding text, the hyperlinked terms and conditions were conspicuously underlined, and the text was not "sandwiched between large, attention-grabbing buttons." *Id.* at *2 (cleaned up); *see also Pizarro v. QuinStreet, Inc.*, No. 22-cv-02803, 2022 WL 3357838, at *3 (N.D. Cal. Aug. 15, 2022) (holding the same on similar facts and compelling arbitration).

[7] In addition, had Plaintiff clicked on the hyperlinked Terms & Conditions, she would have seen, near the top of the very first page in bold, capitalized text, notice of the arbitration clause. Love Decl., Ex. 2 at 2.

*Second*, Plaintiff clearly manifested her assent to Overstock's Terms & Conditions (and the arbitration agreement contained therein), on not just one, but two different occasions. On April 10, 2024, she affirmatively entered her Gmail address and clicked the "Sign Up" button, under which Overstock clearly displayed the hyperlinked Terms & Conditions discussed above. Love Decl., Ex. 1 at 2. After Plaintiff clicked that "Sign Up" button, Overstock then showed her a *second*, confirmatory page, with the same notice and hyperlinked terms conspicuously included once again. *Id.*, Ex. 1 at 3. Plaintiff then repeated this same user flow on July 4, 2024, when she entered a different email address, clicked the "Sign Up" button with clear notice of Overstock's Terms & Conditions, and then saw the confirmatory page with the same notice thereafter. Courts regularly find adequate assent where, as here, the website requires users to click a "Sign Up" or "I Agree" button after being presented with terms and conditions of use, even in instances where the terms and conditions themselves are in a separate hyperlinked document. *See, e.g., Fteja v. Facebook, Inc.*, 841 F. Supp. 2d 829, 837 (S.D.N.Y. 2012) (collecting cases); *Nguyen*, 763 F.3d at 1176–77 (citing *Fteja* with approval and noting that courts enforce agreements "where the user is required to affirmatively acknowledge the agreement before proceeding with use of the website.").

By accepting the Terms & Conditions through the process described above, Plaintiff expressly agreed to its requirement that "any disagreement, controversy, or claim . . . relating in any way to your access to or use of the Sites . . . will be resolved by binding arbitration[.]" Love Decl., Ex. 2 at 9. Her agreement is binding and must be enforced.

### 2. The Arbitration Agreement's Delegation Clause Is Enforceable and Requires that an Arbitrator Decide Arbitrability Challenges.

Plaintiff's arbitration agreement includes a delegation clause. Love Decl., Ex. 2 at 12. "A delegation clause is a clause within an arbitration provision that delegates to the arbitrator gateway questions of arbitrability, such as whether the agreement covers a particular controversy or whether the arbitration provision is enforceable at all."

*Caremark, LLC v. Chickasaw Nation*, 43 F.4th 1021, 1029 (9th Cir. 2022). If a valid delegation clause exists, "a challenge to the validity of an entire arbitration agreement—[including] an unconscionability challenge—must be decided by the arbitrator[.]" *Id.* So long as the agreement "clearly and unmistakably" delegates arbitrability issues to the arbitrator and the delegation clause itself is not unconscionable under state law, then the delegation clause must be enforced. *See Brennan v. Opus Bank*, 796 F. 3d 1125, 1130–32 (9th Cir. 2015); *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 70–72 (2010).

**(i) The Delegation Clause Is "Clear and Unmistakable."**

An arbitration agreement can delegate the threshold issue of arbitrability to the arbitrator so long as the agreement does so "clearly and unmistakably." *Brennan*, 796 F.3d at 1130 (quoting *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649 (1986)). Yet the Ninth Circuit has held that arbitration agreements "clearly and unmistakably" delegate arbitrability challenges to an arbitrator even when the agreements merely *incorporate* arbitration rules that provide an arbitrator "the power to rule on his or her own jurisdiction, including any objections with respect to the . . . validity of the arbitration agreement." *Id.* at 1130–31 (collecting cases); *see also In re BAM Trading Servs. Inc. Sec. Litig.*, 733 F. Supp. 3d 854, 863 (N.D. Cal. 2024) (applying *Brennan* to arbitration agreement between sophisticated entity and consumer).

Even more exists here. Overstock's delegation clause expressly provides that the arbitrator has the "exclusive authority" to resolve disputes regarding the Arbitration Agreement, including its "enforceability, revocability, scope, or validity." Love Decl., Ex. 2 at 12. The text itself is functionally equivalent to language that the Ninth Circuit has held to be sufficiently clear and unmistakable. *See Brennan*, 796 F.3d at 1130[8]; *Momot v. Mastro*, 652 F.3d 982, 988 (9th Cir. 2011) ("We hold that this language, delegating to the arbitrators the authority to determine 'the validity or application of any of the provisions of' the arbitration clause, constitutes 'an agreement to arbitrate threshold

---

[8] The AAA rules at issue in *Brennan* provided that the "arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the . . . validity of the arbitration agreement." 796 F.3d at 1130.

issues concerning the arbitration agreement.'" (citation omitted)). And here, the delegation clause is expressly included in Overstock's Terms & Conditions rather than being incorporated by reference, making it even more clear and unmistakable than those that have been held to be sufficient.

**(ii) The Delegation Clause Is Not Unconscionable.**

The delegation clause is also not unconscionable under applicable state law—here, Utah's.[9] An unconscionability analysis under Utah law has two prongs. *Ryan v. Dan's Food Stores, Inc.*, 972 P.2d 395, 402 (Utah 1998). "The first prong—substantive unconscionability—focuses on the agreement's contents. The second prong—procedural unconscionability—focuses on the formation of the agreement." *Id.* The party claiming unconscionability "bears a heavy burden," since the law "permits parties to enter into unreasonable contracts or contracts leading to a hardship on one party." *Id.*

Neither element of unconscionability is present here. *First*, there is no substantive unconscionability: the terms are not "so one-sided as to oppress or unfairly surprise an innocent party," and "there exists [no] overall imbalance in the obligations and rights imposed by the bargain." *Id.* Delegating the issue of arbitrability to the arbitrator merely clarifies the roles of the arbitrator and the court, and assists in streamlining the proceedings. Indeed, the Supreme Court has confirmed that such provisions are enforceable. *See Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 71 (2019)

---

[9] Utah law applies to questions of contract validity in this case. Federal courts must use the choice-of-law rules of the forum state. *See Eiess*, 404 F. Supp. 3d at 1254. Where there is a choice-of-law provision, California courts inquire (1) whether the chosen state has a substantial relationship to the parties or transaction, or (2) whether there is any other reasonable basis for the parties' choice of law. *Id.* at 1254–55. If either is satisfied, the choice-of-law provision is enforced unless the other state's law is against a fundamental policy of California, and California's interest is materially greater. *Id.* Here, the contract specifies that Utah law governs. Love Decl., Ex. 2 at 8–9. According to Plaintiff's allegations, Utah has a substantial relationship to Overstock: the company was originally incorporated in the state, and has its principal place of business there. FAC ¶ 15. And there is no clear "fundamental policy" of California which would be violated by applying Utah law.

That said, the outcome is no different if California law applies, as delegation clauses are routinely upheld under California law. *See Aggarwal v. Coinbase, Inc.*, 685 F.Supp.3d 867, 873–74, 879–82 (N.D. Cal. 2023) (collecting cases); *Donovan v. Coinbase Glob., Inc.*, 649 F.Supp.3d 946, 952–54 (N.D. Cal. 2023).

("When the parties' contract delegates the arbitrability question to an arbitrator, the courts must respect the parties' decision as embodied in the contract.").

*Second*, there is no procedural unconscionability either. The method in which Plaintiff agreed to the Terms & Conditions was completely voluntary: she elected to sign up for Overstock's emails and receive a discount, and subscribing was not a prerequisite to using the website. And while Plaintiff could have opted out of the arbitration clause altogether, she did not. Love Decl. ¶¶ 7, 9. Finally, although the manner of agreement bears some resemblance to that of "adhesion" contracts,[10] this alone cannot warrant a finding of procedural unconscionability since adhesive consumer contracts are traditionally upheld under Utah law. *See, e.g., Vinagray v. Experian Info. Sols., Inc.*, No. 20-CV-715, 2021 WL 861606, at *4 (E.D.N.Y. Mar. 8, 2021) (collecting cases finding arbitration clauses in consumer contracts to be enforceable under Utah law); *MacArthur v. San Juan Cnty.*, 416 F. Supp. 2d 1098, 1187 (D. Utah June 13, 2005) ("Under Utah law, 'adhesion contracts' are not prohibited *per se*."). The delegation clause is accordingly enforceable in this action.

### C. Plaintiff's Claims Fall Within the Scope of the Arbitration Agreement.

The arbitration agreement encompasses Plaintiff's claims. The Supreme Court has explained that "as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24–25; *see also Commc'ns Workers of Am.*, 475 U.S. at 650 ("An order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage.") (citation omitted); *Lamps Plus, Inc. v. Varela*, 587 U.S. 176, 189 (2019) ("[A]mbiguities about the scope of an arbitration agreement must be resolved in favor of arbitration."). The arbitration provision contained in Overstock's Terms & Conditions provides: "[Y]ou and

[10] An adhesion contract is a standardized form contract, which provides a party with the option to adhere to it or reject it. *See Bielski v. Coinbase, Inc.*, 87 F.4th 1003, 1014 (9th Cir. 2023).

Beyond agree that any disagreement, controversy, or claim between you and Beyond arising out of or relating in any way to your access to or use of the Sites, any communications you receive, any products sold or distributed through the Sites, or the Terms and prior versions of the Terms (each, a 'Dispute') will be resolved by binding arbitration[.]"[11] Love Decl., Ex. 2 at 9; *see Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1131 (9th Cir. 2000) (upholding a similar clause that was described as "broad and far reaching," and holding that the dispute fell within its scope).

Here, the parties' agreement to broadly arbitrate "any disagreement, controversy, or claim" encompasses the current action. Every count asserted by Plaintiff is directly "relat[ed]" to or "aris[es] out of" her "access to or use of" Overstock's website or "any products sold[.]" Love Decl., Ex. 2 at 9. Her claim under CIPA, for example, is exclusively based on Overstock and Shopify's alleged "collect[ion of] identifying information of Plaintiff and Class Members" while browsing Overstock's website. FAC ¶ 129; *see also id.* ¶ 131. Plaintiff's CDAFA claim is similarly premised on defendants' "unauthorized installation and storage of third-party tracker cookies on Plaintiff and Class members' web browsers" as she visited the Overstock website. *Id.* ¶ 148. And her claimed violation of the California Constitution stems from Shopify's alleged use of "website tracking technology" and installation of "third-party tracker cookies" on those who browsed the Overstock website. *Id.* ¶ 160; *see also id.* ¶ 105 ("When Plaintiff visited the Website, the Website's code—as programmed by Defendants—caused the Tracker to be installed on Plaintiff's browsers.").

And even if Plaintiff's purchases occurred before she accepted Overstock's Terms & Conditions, those terms expressly permit retroactive application: "For the purposes of this Arbitration Agreement, 'Dispute' will also include disputes that arose or involve facts occurring before the existence of this or any prior versions of the Terms as well as claims that may arise after the terminations of these terms." Love Decl., Ex. 2

[11] The arbitration provision includes two exceptions that are not applicable to this case: (1) for claims that qualify to be brought in small claims court, and (2) for claims seeking equitable relief for intellectual property infringement. *See* Love Decl., Ex. 2 at 9.

at 9. Similar provisions have been expressly upheld by courts. *See, e.g.*, *Flores v. Coinbase, Inc.*, No. CV 22-8274, 2023 WL 3564756, at *4 (C.D. Cal. Apr. 6, 2023) ("Parties . . . are free to expressly agree to an updated User Agreement that by its terms applies retroactively."); *Nature's Sunshine Prods., Inc. v. Kumets*, No. 2:20-CV-658, 2021 WL 1293327, at *5 (D. Utah Apr. 7, 2021) ("[T]he arbitration provision at issue applies retroactively to conduct that occurred before its adoption[.]"). Plaintiff's claims are accordingly covered by her arbitration agreement, and must be submitted to arbitration in accordance with the Terms & Conditions.

### D. Equitable Estoppel Requires Arbitration of the Claims Against Shopify.

Plaintiff's claims against Shopify arise exclusively out of her use of the Overstock website. Her claims against Shopify are likewise subject to arbitration.

The FAA permits non-signatories to an agreement containing an arbitration clause to rely on state-law equitable estoppel doctrines to enforce that clause. *See GE Energy Power Conversion France SAS*, *Corp. v. Outokumpu Stainless USA, LLC*, 590 U.S. 432, 437–39 (2020). Under California law,[12] non-signatories to an arbitration agreement, such as Shopify, may compel arbitration against a signatory in either of two distinct circumstances (the "Goldman prongs"):

> (1) [W]hen a signatory must rely on the terms of the written agreement in asserting its claims against the nonsignatory or the claims are "intimately founded in and intertwined with" the underlying contract, and (2) when the signatory alleges substantially interdependent and concerted misconduct by the nonsignatory and another signatory and "the allegations of interdependent misconduct [are] founded in or intimately connected with the obligations of the underlying agreement."

[12] California law applies to questions of equitable estoppel in this case. *See Harris v. Pac. Gas & Elec. Co.*, No. 21-CV-04096, 2022 WL 16637987, at *13 (N.D. Cal. Nov. 2, 2022) (holding that an agreement's choice of law provision did not extend to a nonsignatory's attempt to enforce an arbitration agreement against a signatory). But even if the Court applied Utah law, in accordance with the choice of law provision in the Terms, the analysis would be materially similar. *Paparazzi, LLC v. Sorenson*, No. 4:22-CV-00028, 2023 WL 2760593, at *4–5 (D. Utah Apr. 3, 2023) (outlining Utah's approach to "nonsignatory estoppel": "nonsignatories may compel arbitration in two circumstances: 'The first is when the signatory must rely on the terms of the written agreement in asserting its claims against the nonsignatory. The second is when the signatory alleges substantially interdependent and concerted misconduct by both the nonsignatory and one or more of the signatories to the contract.'" (citation omitted)).

*Martinez-Gonzalez v. Elkhorn Packing Co.*, 635 F. Supp. 3d 883, 893–94 (N.D. Cal. 2022) (quoting *Goldman v. KPMG*, 173 Cal. App. 4th 209, 219–21 (2009)). Although satisfying just one of the *Goldman* prongs is sufficient, both circumstances are present here. *See Russell v. BMW of N. Am., LLC*, No. 2:22-cv-03299, 2022 WL 18674435, at *5 (C.D. Cal. Oct. 14, 2022) ("Because the court finds the first [*Goldman*] circumstance to be satisfied . . . it will not address the second").

### 1. First Prong: The Claims Against Shopify Are Intertwined with the Overstock Arbitration Agreement.

Beginning with the first *Goldman* prong, Plaintiff's claims against Defendants are "intimately founded in and intertwined with" the underlying contract–here, the Terms & Conditions and incorporated Privacy Policy. *Franklin v. Cmty. Reg'l Med. Ctr.*, 998 F.3d 867, 871 (9th Cir. 2021). At the outset, the entirety of Plaintiff's allegations against Shopify are founded on her visits to Overstock's website to browse products and make purchases. Plaintiff's conduct is entirely governed by Overstock's Terms & Conditions and the Privacy Policy, which is expressly incorporated in the Terms & Conditions. Love Decl. ¶¶ 4–11 and Ex. 2 at 14 ("Please review our Privacy and Security Policy . . . which [is] incorporated herein by this reference."). According to the Complaint, Overstock was a merchant on Shopify's platform during the relevant time period, and Shopify served as a service provider to Overstock. *See* FAC ¶¶ 3, 55. Because Shopify was a service provider to Overstock, Plaintiff had no separate set of terms and conditions with Shopify. Therefore, but for Plaintiff's use of Overstock's platform, which is subject to the Terms & Conditions, there could be no claims against Shopify.

Next, Plaintiff's claims focus entirely on Overstock's transmission of Plaintiffs' communications and information to Shopify by virtue of Shopify's e-commerce services. *See, e.g.*, FAC ¶¶ 3–4. This directly challenges the Terms & Conditions, which provide that Overstock "may disclose any Content or electronic communication of any kind . . . if such disclosure is necessary or appropriate to operate the [website]." Love Decl., Ex. 2 at 7.

Further, to support her claims, Plaintiff alleges that Overstock and Shopify purportedly failed to adequately disclose their collection of and use of customer data. *See, e.g.*, FAC ¶¶ 9 ("At no time do Defendants inform consumers who use their payment forms on Overstock that [Shopify will collect and use consumer information]"), 79 ("Specifically, [Shopify] does not inform consumers that: (i) Shopify will intercept communications that consumers believe are being sent exclusively to Overstock"). Her allegations necessarily implicate the adequacy of Overstock's privacy disclosures. Yet the very underlying agreement—here, Overstock's Terms & Conditions—expressly incorporates Overstock's Privacy Policy, which governs the collection, transmission and use of customer data, including how that information is shared with third-party service providers. Love Decl., Ex. 2 at 2, 14, 18; *see also* Love Decl., Ex. 3 at 6, 9.[13] Otherwise stated, Plaintiff's allegations against both Overstock and Shopify "rely on and presume the existence of the contract," the Terms & Conditions, that she has entered into with the signatory, Overstock. *Boucher v. All. Title Co.*, 127 Cal. App. 4th 262, 269 (2005). Plaintiff does not allege that she has any independent relationship with Shopify outside of her relationship with Overstock.

At bottom, Plaintiff's claims are based on conduct governed by the Terms & Conditions, and chiefly implicate the sufficiency of disclosures that implicate the Privacy Policy that is incorporated in those Terms & Conditions. Her claims are accordingly intimately intertwined with those Terms & Conditions. The first *Goldman* prong is met, and Plaintiff is required to arbitrate her claims against Shopify.

#### 2. Second Prong: Plaintiff Alleges Interdependent Conduct by Overstock and Shopify.

Satisfying the first *Goldman* prong alone is sufficient for the Court to compel arbitration. *See Russell*, 2022 WL 18674435, at *5. Even if it were not, Plaintiff's claims also meet the second *Goldman* prong, which requires allegations of interdependent

[13] As noted earlier, *supra* Section I, in addition to being incorporated in the Terms themselves, Overstock's Privacy Policy was hyperlinked in the acknowledgment that was directly underneath the field in which Plaintiff twice entered her email and agreed to Overstock's Terms.

and concerted misconduct between the signatory and non-signatory that is "founded in or intimately connected with the obligations of the underlying agreement." *Goldman*, 173 Cal. App. 4th at 219. Here, the FAC is chock full of allegations asserting that Shopify and Overstock—"the nonsignatory and another signatory" in this dispute—jointly committed "substantially interdependent and concerted misconduct" related to the collection and use of Plaintiff's data. *Martinez-Gonzalez*, 635 F. Supp. 3d at 893–94 (internal quotation omitted); *see also Goldman*, 173 Cal. App. 4th at 219. And that alleged misconduct is "intimately connected with the obligations of the underlying agreement"—here, the Terms & Conditions, including its incorporated Privacy Policy. *Goldman*, 173 Cal. App. 4th at 219.

Plaintiff's chief claims against Shopify are that Shopify "surreptitiously" intercepts consumer data, installs tracking cookies, and "makes no effort to inform consumers regarding its activities with respect to its interception and collection of consumer information using merchant websites." FAC ¶¶ 4–7, 79. Yet Plaintiff's own allegations demonstrate that this purported misconduct is interdependent with Overstock's alleged failure to disclose Shopify's presence. *See* FAC ¶¶ 2 ("Overstock causes trackers and cookies developed by Defendant Shopify to be installed on Website visitors' internet browsers."); 3 ("Shopify created software code to enable Overstock to integrate Shopify's payment forms into their applications."); 55 ("merchants who already own websites like Overstock can elect to embed certain Shopify assets"); 81 (alleging merchants—i.e., Overstock—must affirmatively delete the "powered with Shopify" link). All of the improper conduct that is alleged against Shopify cannot be divorced from the misconduct allegedly committed by Overstock.

This interdependency is underscored by Plaintiff's repeated references to Defendants working in concert. The FAC is replete with allegations that attribute misconduct to Shopify and Overstock jointly:

- "*Defendants* then use the Tracker to collect Website visitors' identifying information, as well as dozens of other data points that reveal users'

behavior and activity on the website." *Id.* ¶ 2 (emphasis added).

- "*Defendants* do not use consumers' private information simply for the purposes of processing the payments in question. Instead, *Defendants* indefinitely store the information[.]" *Id.* ¶ 8 (emphases added).
- "At no time do *Defendants* inform consumers who use their payment forms on Overstock that . . . " *Id.* ¶ 9 (emphasis added).
- "*Defendants* do not disclose to consumers Shopify's role in the transaction[.]" *Id.* ¶ 57 (emphasis added).
- "*Defendants* share data about every page load, product listing, product view, purchase, and other user events on the Website with multiple third parties." *Id.* ¶ 89 (emphasis added).

It is beyond reasonable dispute that Plaintiff's claims affirmatively plead interdependent and concerted conduct between Shopify and Overstock. And this interdependent conduct is intimately connected with the underlying agreement at hand: Overstock's Terms & Conditions. As detailed above, Plaintiff's claims against Shopify are wholly derived from her use of Overstock's retail website, and the Terms & Conditions govern that use. When she agreed to the Terms & Conditions, Plaintiff was placed on further notice of—and indeed consented to—Overstock's Privacy Policy, which disclosed Overstock's data collection and data sharing policies. Love Decl., Ex. 2 at 2, 7. Plaintiff's allegations that any data was improperly shared between Overstock and Shopify fall squarely within the scope of the Terms & Conditions and incorporated Privacy Policy, and are thus subject to arbitration under the second *Goldman* prong.

The linchpin of equitable estoppel is fairness. *Goldman*, 173 Cal. App. 4th at 220. Where Plaintiff agreed to an arbitration clause in connection with her use of Overstock's online retail website and is suing a nonsignatory party, Shopify, based on conduct *solely* arising from such use, she should not be able to repudiate the effect of the arbitration agreement. Accordingly, because both (or either) of the *Goldman* prongs are satisfied, the Court should compel a signatory to an arbitration agreement to arbitrate with a

nonsignatory to that agreement. *See Russell*, 2022 WL 18674435, at *5–*6 (granting motion to compel arbitration, staying proceedings, and declining to address the second Goldman prong after the first was satisfied) *cf. Shivkov v. Artex Risk Sols., Inc.*, 974 F.3d 1051, 1069–71 (9th Cir. 2020).

**E. This Action Should Be Stayed Pending Arbitration of Plaintiff's Claims.**

When, as here, the FAA governs an arbitration provision that covers a plaintiff's claims, Section 3 of the FAA requires the district court to compel arbitration and stay federal proceedings. 9 U.S.C. § 3 (providing for a stay of federal court proceedings pending the resolution of arbitration); *see also, e.g., Marshall v. Ameriprise Fin. Servs.*, 735 F. Supp. 3d 1229, 1246–47 (E.D. Cal. 2024) ("Where claims are subject to arbitration, federal courts must stay the action until the arbitration is resolved."). All of Plaintiff's claims fall within the scope of her arbitration agreement, and accordingly, a stay is warranted pending arbitration proceedings.

Should the Court order that Plaintiff arbitrate her claims against Overstock, but not those against Shopify, the Court should stay all claims against Shopify pending the conclusion of Plaintiff's arbitration against Overstock. Federal courts have broad discretion to stay litigation among non-arbitrating parties during the pendency of arbitration proceedings. *See, e.g.*, *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 20–21 n.23 (district court has "discretion" to "stay litigation among the non-arbitrating parties pending the outcome of the arbitration."). The Court may consider factors such as judicial economy and efficiency, and the risk of inconsistent results, in exercising such discretion. *See, e.g.*, *Smith Barney v. Burrow, No. CV F 08-0373*, 2008 WL 4426805, at *6 (E.D. Cal. Sep. 26, 2008) (considering risk of "inconsistent results" and likelihood of "waste of time and resources of the parties and this court" to support stay pending arbitration).

Both factors weigh in favor of a stay. *First*, economy and efficiency would be furthered because the core of Plaintiff's case concerns interdependent actions between

Shopify and Overstock that purportedly resulted in privacy violations. A stay would avoid duplicating substantial discovery specific to Overstock and the proposed class that used the website, which would proceed nonetheless in arbitration.

*Second*, there is a substantial risk of inconsistent results should Plaintiff's claims against Overstock and Shopify proceed in parallel in separate forums. The claims against Shopify require resolution of matters inextricably bound in issues involving Overstock and the Terms. These include: (1) whether, and how, Overstock disclosed to Plaintiff the use of Shopify's products in the Terms and Privacy Notice (*see* FAC ¶¶ 57, 83, 130); (2) whether Overstock and Shopify worked together to "install[]" software, "collect identifying information of Plaintiff and Class Members," and "intercept and collect information" related to website activity (*id.* ¶¶ 129, 132), (3) whether Overstock and Shopify "knowingly accessed and without permission altered and used Plaintiff's and Class members' data and computer systems" or "added and altered data and computer software on Plaintiff's and Class members' computers or computer systems" (*id.* ¶¶ 148, 149), (4) whether Overstock and Shopify's conduct "constituted a serious invasion of privacy that would be highly offensive to a reasonable person" (*id.* ¶ 162), and (5) whether Plaintiff suffered any cognizable injury.

Any arbitration with Overstock will have to confront these issues, and their resolution will impact—if not completely resolve—Plaintiff's claims against Shopify. *See, e.g.*, *Wolf v. Langemeier*, No. 2:09-CV-03086, 2010 WL 3341823, at *8 (E.D. Cal. Aug. 24, 2010) (staying entire action pending arbitration "[i]n light of the similarity of the issues of law and fact among each Plaintiff's claim and the possibility of inconsistent rulings"); *Bui v. Northrop Grumman Sys. Corp.*, No. 15-CV-1397, 2019 WL 13166662, at *2 (S.D. Cal. Jan. 29, 2019) (staying action pending arbitration where the same issues had to be decided in both the arbitration and litigation, presenting a risk of inconsistent rulings); *Bischoff v. DirecTV, Inc.*, 180 F. Supp. 2d 1097, 1114 (C.D. Cal. 2002) ("[A] failure to stay the action may lead to inconsistent findings which will hinder the pursuit of judicial efficiency.").

To avoid unnecessary expenditure of resources and the risk of inconsistent findings, Defendants request that if Plaintiff's claims against Shopify are not subject to arbitration, the Court stay all claims against Shopify pending the resolution of any arbitration it may order as to Overstock.

## III. CONCLUSION

For these reasons, Defendants respectfully request that this Court compel arbitration of Plaintiff's claims and dismiss the Complaint without prejudice, or in the alternative, stay this case pending arbitration.

Dated: January 22, 2026 COOLEY LLP

By: */s/ Benedict Hur*
Benedict Hur

Attorney for Defendant
SHOPIFY INC.

Dated: January 22, 2026 CONRAD, METLITZKY, KANE LLP

By: */s/ Grace Yang* (as authorized on January 22, 2026)
Grace Yang

Attorney for Defendant
BEYOND, INC. DBA
OVERSTOCK.COM