**POTTER HANDY LLP**
Mark D. Potter (SBN 166317)
mark@potterhandy.com
James M. Treglio (SBN 228077)
jimt@potterhandy.com
Isabel Rose Masanque (SBN 292673)
isabelm@potterhandy.com
100 Pine St., Ste 1250
San Francisco, CA 94111
Phone: (858) 375-7385
Fax: (888) 422-5191

Attorneys for Plaintiff, individual, and on behalf of all others similarly situated

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| CONNIE JOHNSON, an individual and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>BEYOND, INC. DBA OVERSTOCK.COM, a Delaware corporation; SHOPIFY INC., a Canadian corporation; and DOES 1-100, inclusive,<br><br>Defendants. | Case No: 2:25-cv-03327-DJC-CSK<br><br>**PLAINTIFF CONNIE JOHNSON'S OPPOSITION TO DEFENDANTS' MOTION TO COMPEL ARBITRATION OR STAY**<br><br>Hearing Date: March 19, 2026<br>Hearing Time: 1:30 p.m.<br>Courtroom: 7—14th Floor<br><br>Hon. Daniel J. Calabretta |

# TABLE OF CONTENTS


I. INTRODUCTION .......... 1

II. LEGAL STANDARD .......... 1

III. LEGAL ARGUMENT .......... 3

A. The FAA Requires an Agreement and Does Not Extend to Nonsignatories. .......... 3

B. Shopify Lacks Any Right to Compel Arbitration. .......... 4

C. Plaintiff's Claims Are Not Intertwined with Any Contract. .......... 6

D. Equitable Estoppel Does Not Apply to Shopify. .......... 8

E. The Court Should Deny Any Stay and Allow Plaintiff's Claims Against Shopify to Proceed in Court. .......... 10

V. CONCLUSION .......... 12

# TABLE OF AUTHORITIES

## Cases

*Chen v. Bank of Am., N.A.,* 2020 WL 4561658, at *2 (C.D. Cal. July 2, 2020) ............................ 12

*Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000) ........................ 1

*Golden v. Dameron Hospital Ass'n*, 2012 WL 4208779, at *8 (E.D. Cal. Sept. 19, 2012) ............. 7

*Goldman v. KPMG LLP,* 173 Cal.App.4th 209, 221, 92 Cal.Rptr.3d 534 (2009) .................. passim

*JNK Entertainment v. SP Sales & Entertainment*, 2015 WL 13283845, at *5–6 (C.D. Cal. Sept. 2, 2015) ........................................ 11

*Kramer v. Toyota Motor Corp.,* 705 F.3d 1122, 1126 (9th Cir. 2013) .................................. passim

*Metalclad Corp. v. Ventana Envtl. Org. P'ship,* 109 Cal.App.4th 1705, 1713, 1 Cal.Rptr.3d 328 (2003) ........................................ 2

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985) .................. 4

*Mundi v. Union Security Life Insurance Co.*, 555 F.3d 1042, 1047–48 (9th Cir. 2009) .................. 9

*Oleesky v. Hartford Life & Accident Insurance Co.,* 2025 WL 2958841, at 1, 4 (C.D. Cal. Aug. 27, 2025) ........................................ 11

*Simitar Entm't, Inc. v. Silva Entm't, Inc.*, 44 F. Supp. 2d 986, 997 (D. Minn. 1999) .............. 10, 11

*SolarPark Korea Co., Ltd. v. Solaria Corp.*, 2023 WL 4983159, at *12–14 (N.D. Cal. Aug. 2, 2023) ........................................ 5

*Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 681 (2010) ...................................... 4

*United Commc'ns Hub, Inc. v. Qwest Commc'ns, Inc.*, 46 F. App'x 412, 415 (9th Cir. 2002). 3, 10, 11, 12

*United Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582 (1960) ....................... 1

*Volt Info. Scis., Inc. v. Leland Stanford Jr. Univ.*, 489 U.S. 468, 474–75 (1989) ............................ 4

## Statutes

9 U.S.C. § 2 ........................................ 1

9 U.S.C. §§ 3–4 ........................................ 1, 3

## I. INTRODUCTION

Defendants Overstock.com and Shopify, Inc. move to compel arbitration of Plaintiff's claims. Plaintiff opposes the motion to the extent it seeks to compel arbitration of Plaintiff's claims against Shopify and to stay those claims pending any arbitration. Shopify is not a signatory to any arbitration agreement with Plaintiff, nor is it a party to any contract between Plaintiff and Overstock. Plaintiff's claims against Shopify, which include invasion of privacy and misuse of data, arise independently of any contractual relationship and do not rely on, reference, or seek to enforce any agreement containing an arbitration provision. There is no legal or equitable basis to compel arbitration of Plaintiff's claims against Shopify—a nonsignatory—or to stay Plaintiff's claims against Shopify pending any arbitration involving Overstock.

Moreover, even if the Court compels arbitration between Plaintiff and Overstock, it should not stay Plaintiff's concurrent litigation against Shopify. The FAA's policy favoring arbitration does not extend so far as to create arbitration agreements where none exist, and the law strongly disfavors staying non-arbitrable claims absent a compelling justification. For these reasons, the Court should allow Plaintiff's case against Shopify to proceed in this forum.

## II. LEGAL STANDARD

The Federal Arbitration Act ("FAA") provides that written arbitration agreements in contracts involving commerce are "valid, irrevocable, and enforceable" save for standard contract defenses. 9 U.S.C. § 2. Under the FAA, a party seeking to compel arbitration must establish (1) the existence of a valid, written arbitration agreement, and (2) that the agreement encompasses the dispute at issue. *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000). If (and only if) both conditions are met, the court will order the parties to arbitrate and stay the court case as to those arbitrable issues. See 9 U.S.C. §§ 3–4. Crucially, however, "arbitration is a matter of contract," and "a party cannot be required to submit to arbitration any dispute which [she] has not agreed so to submit." (quoting *United Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582 (1960)). In other words, the FAA's strong federal policy favoring arbitration does not apply to disputes that the parties have not agreed to arbitrate. Arbitration must be rooted in the parties' consent.

As a general matter, a contractual right to compel arbitration may not be invoked by one who is not a party to the agreement. See *Kramer v. Toyota Motor Corp.,* 705 F.3d 1122, 1126 (9th Cir. 2013). A nonsignatory such as Shopify therefore cannot compel arbitration against Plaintiff unless Shopify can establish a contract or equitable theory that permits it to enforce the arbitration agreement. One such theory is equitable estoppel under California law, which governs the equitable estoppel analysis here. California's equitable estoppel doctrine permits a nonsignatory defendant to enforce an arbitration clause only in narrow circumstances. As *Goldman* emphasizes, the "sine qua non" for allowing a nonsignatory to compel arbitration is that the signatory-plaintiff's claims against the nonsignatory are dependent on, or founded in and inextricably intertwined with, the contractual obligations of the agreement containing the arbitration clause. See *Goldman*, 173 Cal. App. 4th 209, 217–218. Two recurring factual scenarios are sometimes used to describe when that intertwined-claims requirement may be met, but neither operates as a freestanding alternative that dispenses with the core requirement. Under this framework:

1. First, when a signatory must rely on the terms of the written agreement in asserting its claims against the nonsignatory or the claims are "intimately founded in and intertwined with" the underlying contract. *Goldman v. KPMG LLP,* 173 Cal.App.4th 209, 221, 92 Cal.Rptr.3d 534 (2009) (quoting *Metalclad Corp. v. Ventana Envtl. Org. P'ship,* 109 Cal.App.4th 1705, 1713, 1 Cal.Rptr.3d 328 (2003)).
2. Second, when the signatory alleges substantially interdependent and concerted misconduct by the nonsignatory and another signatory and "the allegations of interdependent misconduct [are] founded in or intimately connected with the obligations of the underlying agreement." *Id* at 219.

A California court adopted this two-prong test from federal law, emphasizing that both prongs ultimately turn on the core question of fairness. The "linchpin for equitable estoppel is equity, or fairness" to prevent a plaintiff from "relying on the contract as the basis for [her] claims while repudiating the contract's arbitration clause." See *Goldman*, 173 Cal. App. 4th 209, 220. If the plaintiff's claims can stand independently of the contract, or if the alleged collusion does not implicate any contract duty, there is no inequity in refusing to compel arbitration with a

nonsignatory. In such cases, the doctrine does not apply. The Ninth Circuit has expressly embraced California's formulation: "Equitable estoppel applies only if the plaintiffs' claims against the nonsignatory are dependent upon, or inextricably bound up with, the obligations imposed by the contract the plaintiff has signed with the signatory defendant." *Id* at 230. If, instead, the claims "arose independently of the terms of the agreement," equitable estoppel is inappropriate. *Kramer*, 705 F.3d at 1132. This is a threshold issue for the Court to decide; a nonsignatory's entitlement to compel arbitration is a question of arbitrability that is not delegated to the arbitrator absent the plaintiff's clear agreement to arbitrate with that party.

When some but not all claims (or parties) are subject to arbitration, the Court must determine how to proceed with any remaining litigation. The FAA mandates a stay of judicial proceedings only for the issues that are actually referred to arbitration. 9 U.S.C. §3 (court shall stay trial of the arbitrable issue). By contrast, non-arbitrable claims are not automatically stayed; the decision whether to stay the rest of the case is left to the Court's discretion, guided by considerations of judicial efficiency and potential prejudice. "Although [the] decision whether to stay non-arbitrable issues pending arbitration rests within the district court's sound discretion, there is a preference for proceeding with the non-arbitrable claims when feasible." *United Commc'ns Hub, Inc. v. Qwest Commc'ns, Inc.*, 46 F. App'x 412, 415 (9th Cir. 2002).

Staying the entire case is appropriate only if the Court finds that the unresolved arbitrable issues predominate over the nonarbitrable claims, or that the outcome of the nonarbitrable claims will necessarily depend on the arbitrator's decision. *United Commc'ns Hub, Inc.,* at 415. Absent such circumstances, the normal course is to allow the nonarbitrable claims to proceed in court while arbitration runs its course. As discussed below, in this case it is both feasible and fair to continue with Plaintiff's claims against Shopify in this Court even if Overstock goes to arbitration.

## III. LEGAL ARGUMENT

### A. The FAA Requires an Agreement and Does Not Extend to Nonsignatories.

Defendants begin by arguing that the FAA reflects a strong federal policy favoring the enforcement of arbitration agreements (Defs.' Motion at 4-5.) Plaintiff does not dispute the FAA's

general pro-arbitration stance. But Defendants overlook a critical prerequisite: there must be a valid arbitration agreement between the parties to arbitrate the dispute. The Supreme Court has made clear that "the first task of a court asked to compel arbitration is to determine whether the parties agreed to arbitrate that dispute." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985). The FAA's policy favoring arbitration "does not confer a right to compel arbitration of any dispute at any time." *Volt Info. Scis., Inc. v. Leland Stanford Jr. Univ.*, 489 U.S. 468, 474–75 (1989). Here, there is no agreement to arbitrate between Plaintiff and Shopify. The only arbitration clause at issue is contained in Overstock's Terms and Conditions, a contract to which Shopify is not a party.

In their motion, Defendants stress that the FAA governs Plaintiff's arbitration agreement with Overstock and generally requires enforcement of such agreements. That may be true as between Plaintiff and Overstock. But nothing in the FAA overrides the fundamental principle that arbitration "is a matter of consent, not coercion." *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 681 (2010). The FAA does not allow a nonsignatory like Shopify to compel Plaintiff into arbitration absent a recognized contract-law basis. "Arbitration is, of course, a matter of contract and a party cannot be required to submit to arbitration any dispute which [she] has not agreed so to submit." *Stolt-Nielsen S.A.*, 559 U.S. 662, 681. In short, the federal policy favoring arbitration does not apply to entities and disputes outside the scope of the agreement. Thus, Shopify's status as a nonsignatory places it outside the FAA's reach unless Shopify can affirmatively demonstrate that an exception (such as equitable estoppel) brings it within the contract. As shown below, Shopify cannot meet that burden.

**B. Shopify Lacks Any Right to Compel Arbitration.**

Defendants assert that Plaintiff entered an arbitration agreement through Overstock.com's website Terms and Conditions, an assertion Plaintiff does not concede as to formation, validity, or enforceability. Regardless, Shopify is not Overstock. Plaintiff never signed or agreed to any contract with Shopify, and Shopify is not mentioned in the Terms and Conditions, let alone identified as a party or third-party beneficiary. The Terms, by their own language, commit Plaintiff only to arbitrate disputes between her and Overstock. Nowhere does Plaintiff agree to arbitrate claims against any

other entity. By its plain language, therefore, the arbitration clause does not extend to her separate claims against Shopify.

Defendants tacitly acknowledge Shopify's outsider status by relying on the doctrine of equitable estoppel to pull Shopify within the arbitration clause. But before turning to that exception, it is important to note that Shopify attempts to invoke even the delegation clause in the arbitration agreement, arguing that an arbitrator should decide gateway issues of arbitrability. (Defs.' Motion at 7–10.) This argument gets the situation backwards. It is true that Plaintiff's contract with Overstock contains a delegation provision giving an arbitrator authority to decide certain issues between Plaintiff and Overstock. But Shopify, having no agreement with Plaintiff at all, cannot claim the benefit of that delegation. One cannot delegate to an arbitrator questions about rights or obligations of a party who never agreed to arbitrate in the first place.

Indeed, the Ninth Circuit has squarely held that courts must decide whether a nonsignatory can enforce an arbitration clause, because that issue determines whether there is any agreement to arbitrate between the plaintiff and that nonsignatory. *Kramer*, 705 F.3d at 1127–28 (whether nonsignatory Toyota could compel arbitration was for the court to decide); *Goldman*, 173 Cal. App. 4th at 219 (court must determine if equitable estoppel applies to allow nonsignatory enforcement). Thus, the Court should reject Defendants' attempt to hand off this threshold question to an arbitrator. Shopify has no independent agreement or consent from Plaintiff to arbitrate, so the only question is whether Shopify can enforce Overstock's contract. That question is properly before this Court, and the answer is no.

Recent authority confirms that arbitration agreements may not be enforced against nonsignatories merely because the claims are factually related or involve alleged coordinated conduct. *SolarPark Korea Co., Ltd. v. Solaria Corp.*, 2023 WL 4983159, at *12–14 (N.D. Cal. Aug. 2, 2023). In *SolarPark Korea Co., Ltd.*, the court refused to compel arbitration of claims asserted against nonsignatory defendants, holding that the FAA "does not authorize a court to compel arbitration of issues or parties not covered in the arbitration agreement," and that arbitration is "strictly a matter of consent." *Id*. Even though the plaintiff alleged overlapping facts and concerted misconduct, the court emphasized that nonsignatories who "did not contract with [the plaintiff] to

arbitrate disputes" could not be forced into arbitration. *Id.* at *14*. That rule controls here: Shopify is a complete stranger to the Overstock arbitration agreement, and Plaintiff never consented to arbitrate her claims against Shopify. The Court therefore lacks authority to compel arbitration of those claims.

Accordingly, Shopify stands as a complete stranger to the arbitration agreement between Plaintiff and Overstock. Shopify never gave up its right to jury trial, nor did Plaintiff ever waive her right to sue Shopify in court. Absent a valid basis in law to treat Shopify as if it were a party to Plaintiff's contract with Overstock, Shopify cannot compel arbitration. Defendants' motion, as it pertains to Shopify, therefore hinges entirely on equitable estoppel. We turn next to that issue, and demonstrate that equitable estoppel does not apply.

### C. Plaintiff's Claims Are Not Intertwined with Any Contract.

Under the first prong of the equitable estoppel test, Shopify must show that Plaintiff's claims against Shopify "rely on [the] terms of the written agreement" containing the arbitration clause or are "intimately founded in and intertwined with" that agreement. *Goldman*, 173 Cal. App. 4th at 218–219. This it cannot do. Plaintiff's claims are grounded in statutory and common law duties, not in any contract. Plaintiff alleges that Shopify violated the California Invasion of Privacy Act, the Computer Data Access and Fraud Act, and California's constitutional privacy rights by surreptitiously intercepting and using her personal data without proper consent. (See FAC ¶¶ 1–11, 72–83, 94–100, 129–38.) These causes of action do not assert any breach of Overstock's Terms & Conditions, nor seek to enforce any obligation created by those Terms. Indeed, Plaintiff could prove every element of her privacy claims without even mentioning Overstock's Terms. The existence of the Terms is purely incidental; at most, it might be raised by Defendants as a defensive point (e.g. arguing that Plaintiff "consented" in fine print). But Plaintiff's theory of liability against Shopify in no way requires the Terms. The complaint does not base her right to relief on any contractual promise; it bases it on violations of independent legal duties under California law.

This means Plaintiff's claims are not inextricably bound up with the contract obligations at all. In *Goldman*, for example, investors sued third-party accounting firms for fraud; those investors had an arbitration clause with a different consultant. *Goldman*, 173 Cal. App. 4th at 214–18. The court refused to estop the investors from avoiding arbitration, because their fraud claims did not

depend on the consulting contract. The court emphasized that "none of the allegations against [the nonsignatories] are in any way founded in or bound up with the terms or obligations" of the contract, and the claims were "fully viable without reference to the terms" of that agreement. *Goldman*, 173 Cal. App. 4th at 230. "The allegations depend solely on the actions of [the nonsignatories], not on the terms of the operating agreements, for their success." *Goldman*, 173 Cal. App. 4th at 230. The same is true here: Plaintiff's allegations against Shopify depend solely on Shopify's own conduct (intercepting user data) and on duties imposed by law, not on any promises or duties imposed by Overstock's Terms & Conditions. Plaintiff could discard the contract entirely and still have the same causes of action. Thus, as in *Goldman*, "the basis for equitable estoppel—relying on an agreement for one purpose while disavowing the arbitration clause of the agreement—is completely absent." *Goldman*, 173 Cal. App. 4th at 230.

In *Golden*, the court refused to compel arbitration of civil rights and tort claims even though the plaintiff's relationship with the defendant arose from contracts containing arbitration clauses, holding that "the fact that the tort claim would not have arisen 'but for' the parties' [contract] is not determinative." *Golden v. Dameron Hospital Ass'n*, 2012 WL 4208779, at *8 (E.D. Cal. Sept. 19, 2012). The court emphasized that arbitration clauses may not be expanded to cover "independent wrongs" that do not require interpretation or enforcement of the contract itself, explaining that statutory discrimination and tort claims remain non-arbitrable where they are grounded in duties imposed by law rather than by contract. *Id.* at *8–9*. That principle applies squarely here: Plaintiff's privacy claims against Shopify arise from independent statutory and constitutional duties, not from any obligation created by Overstock's Terms & Conditions, and thus cannot be forced into arbitration through equitable estoppel.

Likewise, the Ninth Circuit reached the same result on analogous facts in *Kramer*. There, car buyers sued Toyota (the manufacturer) for safety defects, while they had arbitration clauses only in their purchase agreements with the dealerships. *Kramer*, 705 F.3d at 1124–25. Toyota argued the buyers' claims were intertwined with the purchase contracts and that the buyers alleged collusion between Toyota and the dealers. The Ninth Circuit squarely rejected Toyota's equitable estoppel argument. It held that the buyers' statutory and warranty claims did not depend on the purchase

agreement terms at all: "Plaintiffs' claims arose independently of the terms of the agreements containing arbitration provisions." *Id.* at 1132. In fact, the complaint did not even reference the purchase contract or any of its terms.

Here, similarly, Plaintiff's First Amended Complaint does not invoke Overstock's Terms & Conditions as a basis for relief. It mentions the Terms only to note that Defendants failed to adequately disclose their data practices, which actually undercuts any claim that the contract is being used as a sword by Plaintiff. Plaintiff is not saying that Overstock violated a duty in the Terms; she's saying Shopify violated duties outside of any contract. As in *Kramer*, her claims "arise independently" of the website contract, and she "does not reference" any particular term of the contract as a necessary element of her claims. *Kramer*, 705 F.3d at 1132. Therefore, the first *Goldman* prong is not met. Plaintiff is not seeking to enforce any part of the Overstock contract while avoiding the arbitration clause; she is simply pursuing extracontractual claims. For this reason alone, equitable estoppel is inapplicable and Shopify's motion fails.

**D. Equitable Estoppel Does Not Apply to Shopify.**

Defendants devote a section of their brief to arguing that "Equitable Estoppel Requires Arbitration of the Claims Against Shopify." (Defs.' Motion at 12–17.) The argument falls short. Under the controlling law just discussed, both circumstances that might permit nonsignatory enforcement of an arbitration clause are absent here. Plaintiff's claims neither rely on the Overstock Terms nor allege intertwined misconduct grounded in that contract. In truth, Defendants are attempting to greatly expand the equitable estoppel doctrine beyond its intended purpose. Adopting Shopify's position would turn nearly any parallel wrongdoing by a signatory and nonsignatory into a blank check for the nonsignatory to compel arbitration, even where the lawsuit is not based on any contractual obligations. That is not the law. Equity does not stretch so far.

First, Plaintiff does not rely on the Overstock Terms to assert her claims against Shopify. Her causes of action arise wholly independent of the contract, and thus lack the foundational element required for equitable estoppel. The Ninth Circuit has made clear that merely "mak[ing] reference to" an agreement containing an arbitration clause is insufficient where the claims themselves do not "rely on the terms of the written agreement." *Kramer*, 705 F.3d 1122, 1128–30 (quoting *Goldman*,

173 Cal. App. 4th 209, 219, 229–30). Here, any passing references to Overstock's Terms or privacy policy serve only to provide factual context or rebut a consent defense, not to establish liability. As *Goldman* explains, compelling arbitration where the claims are independent of the contract would "denude the doctrine of equitable estoppel of its essence," because the "sine qua non" of estoppel is the plaintiff's actual dependence on the underlying contract to state her claim. *Goldman*, 173 Cal. App. 4th at 229–30. No such dependence exists here: Plaintiff's privacy claims are fully viable without reference to Overstock's Terms, and equity therefore does not require arbitration. *Id.*; *Kramer*, 705 F.3d at 1130–33.

Second, the fact that Plaintiff has sued both Overstock and Shopify for jointly engaging in the alleged privacy violations does not change the analysis. Defendants seize on language about "interdependent and concerted misconduct" (the second *Goldman* prong) and point out that the First Amended Complaint sometimes refers to the Defendants collectively. But this prong, too, has an essential contractual component that Shopify ignores. The law is clear that allegations of collusion trigger equitable estoppel only if that misconduct is "founded in or intertwined with" obligations under the contract. *Goldman*, 173 Cal. App. 4th at 219. "[T]he allegations of substantially interdependent and concerted misconduct by signatories and nonsignatories, standing alone, are not enough", it must be misconduct intimately connected with the underlying agreement. *Goldman*, 173 Cal. App. 4th at 219.

Here, any concerted misconduct alleged is not rooted in the contract. Plaintiff does not allege, for example, that Overstock and Shopify conspired to breach some duty imposed by the Terms and Conditions. Rather, she alleges they conspired to violate privacy laws. This distinction is crucial. The wrongdoing at issue (secretly capturing user data) is not an obligation any party undertook in the contract; it is a duty imposed by law irrespective of the contract. Thus, even though Plaintiff claims Defendants acted in concert, that misconduct is not tethered to any contractual promise that Plaintiff is seeking to enforce. Courts routinely refuse to apply equitable estoppel in exactly this scenario. For instance, in *Mundi*, the Ninth Circuit declined to compel arbitration of a fraud claim against a nonsignatory insurer, despite an alleged conspiracy with a signatory lender,

because the plaintiff's claim did not depend on the loan contract. *Mundi v. Union Security Life Insurance Co.*, 555 F.3d 1042, 1047–48 (9th Cir. 2009).

And in *Kramer*, the court held that even though the plaintiffs alleged Toyota and the dealers had acted together to conceal a defect, those "allegations alone cannot trigger equitable estoppel" since the collusive conduct was not premised on violating any term of the purchase agreement. *Kramer*, 705 F.3d at 1133. The same is true here. Plaintiff's allegations of a common scheme between Overstock and Shopify, standing alone, "cannot trigger equitable estoppel." *Id.* at 1133. They have not identified any contractual obligation that is intertwined with the alleged scheme. In fact, Overstock's Terms never even mention Shopify or promise anything about third-party code, so the misconduct alleged cannot be said to be intertwined with any duty in that contract. Accordingly, the second prong of *Goldman* is also unsatisfied.

**E. The Court Should Deny Any Stay and Allow Plaintiff's Claims Against Shopify to Proceed in Court.**

As a fallback, Defendants ask that if the case is sent to arbitration (even in part), the Court should stay the action in its entirety. (Defs.' Motion at 17–19.) The Court should decline that overbroad request. At most, a partial stay might be appropriate as to Plaintiff's claims against Overstock (if the Court compels Plaintiff to arbitrate those). But there is no justification for staying the entire case, including Plaintiff's distinct claims against Shopify, which will not be in arbitration.

The Ninth Circuit has a strong preference for allowing litigation to proceed on non-arbitrable claims in such situations, rather than halting them. *United Commc'ns Hub, Inc. v. Qwest Commc'ns, Inc.*, 46 F. App'x 412, 415. *United Communications Hub, Inc.* explicitly held that while a mandatory stay of arbitrable claims is required, the decision whether to stay nonarbitrable claims is committed to the court's discretion, and that there is "a preference for proceeding with the non-arbitrable claims when feasible." See *United Commc'ns Hub, Inc.*, 46 F. App'x 412, 415. The Ninth Circuit approved the rule that an extension of a stay to cover non-arbitrable claims is warranted only "where the arbitrable claims predominate, or where the outcome of the nonarbitrable claims will depend upon the arbitrator's decision." *Id.* (quoting *Simitar Entm't, Inc. v. Silva Entm't, Inc.*, 44 F. Supp. 2d 986, 997 (D. Minn. 1999)). Neither condition applies here.

In *JNK Entertainment*, the court compelled arbitration of certain contract-based claims but denied a stay as to the remaining non-arbitrable claims, explaining that a stay is appropriate only where "the arbitrable claims predominate, or where the outcome of the nonarbitrable claims will depend on the arbitrable decision." *JNK Entertainment v. SP Sales & Entertainment*, 2015 WL 13283845, at *5–6 (C.D. Cal. Sept. 2, 2015) (quoting *United Commc'ns Hub, Inc.*, 46 F. App'x 412, 415). Because the non-arbitrable claims could proceed independently without undermining arbitration, the court allowed them to move forward in litigation. *Id.* at *6*. The same reasoning applies here: Plaintiff's claims against Shopify will not be resolved by any arbitration between Plaintiff and Overstock, and staying them would serve no legitimate purpose under the FAA.

The claims against Shopify neither predominate over nor depend on the claims against Overstock. They are essentially the same claims, arising from the same facts, against two different wrongdoers. In this posture, courts allow the litigation to proceed against the nonsignatory defendant rather than delay justice. For example, in *Oleesky*, a recent case with an analogous scenario, an ERISA plan had an arbitration agreement with the plaintiff, but a co-defendant insurer did not. *Oleesky v. Hartford Life & Accident Insurance Co.,* 2025 WL 2958841, at 1, 4 (C.D. Cal. Aug. 27, 2025). The Central District of California compelled arbitration as to the plan but refused to stay the court proceedings against the insurer. *Id*. The court cited the Ninth Circuit's preference to proceed with non-arbitrable claims and found no reason to delay the case against the nonsignatory: "Expanding the stay to encompass the claims against [the nonsignatory] is appropriate [only] where the arbitrable claims predominate or the outcome of the nonarbitrable claims will depend on the arbitrator's decision… Given the 'preference' for proceeding with non-arbitrable claims, the Court exercises its discretion to proceed with the claims as to [the nonsignatory]." *Id.* (quoting *Simitar Ent., Inc.*, 44 F. Supp. 2d 986, 997.)

Exactly the same logic applies here. Plaintiff's claims against Shopify are independent and will not be resolved by any arbitrator's decision about Overstock's liability. Shopify has not even attempted to show otherwise. Indeed, Shopify offers no specific argument why a stay of the case against it would be warranted, other than a generic desire to avoid concurrent litigation. That is not

enough. As Judge Staton noted in *Oleesky*, the party requesting a stay of nonarbitrable claims must demonstrate the necessity for it, and Shopify has not done so.

Concurrent proceedings are not only feasible in this case, they are preferable from the standpoint of fairness. Staying the claims against Shopify could unduly prejudice Plaintiff and absent class members by significantly delaying their day in court. Arbitration involving Overstock (especially if limited to individual claims) may take many months or more, during which Shopify's alleged ongoing misconduct would escape judicial scrutiny. By contrast, allowing the Shopify litigation to move forward now could incentivize a more efficient global resolution of the dispute.

Furthermore, there is minimal risk of inconsistent outcomes because the claims against Shopify turn on Shopify's own conduct and legal duties. Even if the arbitrator were to reach some finding in Overstock's favor, that would not bind this Court as to Shopify, nor should it, given that Shopify, by choosing not to be a signatory, opted out of the arbitration and cannot then cherry-pick any favorable arbitral rulings. In short, a stay offers no real benefit but does carry significant downsides. This Court has the authority to manage its docket in the interests of justice, and here those interests counsel strongly against any stay of the claims against Shopify. See *United Commc'ns Hub*, 46 F. App'x at 415 (district court has discretion to proceed with nonarbitrable claims); *Chen v. Bank of Am., N.A.,* 2020 WL 4561658, at *2 (C.D. Cal. July 2, 2020) (exercising discretion to proceed with litigation against nonsignatory while related claims were arbitrated).

Accordingly, Plaintiff respectfully requests that if the Court compels arbitration of her claims against Overstock, it expressly carve out and allow proceedings to continue as to her claims against Shopify. Staying Shopify's portion of the case is unnecessary and unwarranted.

## V. CONCLUSION

For the foregoing reasons, Plaintiff Connie Johnson respectfully submits that: (1) Defendants' motion to compel arbitration be denied; (2) Defendants' motion to stay the litigation be denied; and (3) the case be allowed to move forward in this Court as to Defendants including class proceedings as appropriate.

Dated: February 5, 2026

**POTTER HANDY, LLP**

/s/ James M. Treglio

By: ______________________________

James M. Treglio
Isabel Rose Masanque
Attorneys for Plaintiff