COOLEY LLP
BENEDICT HUR (224018)
(bhur@cooley.com)
SIMONA AGNOLUCCI (246943)
(sagnolucci@cooley.com)
JOSHUA ANDERSON (312836)
(joshua.anderson@cooley.com)
TIFFANY M. LIN (321472)
(tiffany.lin@cooley.com)
3 Embarcadero Center, 20th Floor
San Francisco, California 94111-4004
Telephone: +1 415 693 2000
Facsimile: +1 415 693 2222

Attorneys for Defendant
SHOPIFY INC.

CONRAD | METLITZKY | KANE LLP
MARK R. CONRAD (255667)
(mconrad@conmetkane.com)
GRACE YANG (286635)
(gyang@conmetkane.com)
WILLIAM J. COOPER (304524)
(wcooper@conmetkane.com)
217 Leidesdorff Street
San Francisco, CA 94111
Telephone: (415) 343-7100
Facsimile: (415) 343-7101

Attorneys for Defendant
BEYOND, INC., DBA OVERSTOCK.COM

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

CONNIE JOHNSON, an individual and on behalf of all others similarly situated,

Plaintiff,

v.

BEYOND, INC., DBA OVERSTOCK.COM, a Delaware corporation; SHOPIFY INC., a Canadian corporation; and DOES 1-100, inclusive,

Defendants.

Case No. 2:25–CV–03327–DJC–CSK

**DEFENDANTS SHOPIFY INC. AND BEYOND, INC., D/B/A OVERSTOCK.COM'S JOINT REPLY IN SUPPORT OF MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS**

| | |
|---|---|
| Date | March 19, 2026 |
| Time | 1:30 PM |
| Department | Courtroom 7 |
| Judge: | Daniel J. Calabretta |
| Trial Date: | none set |
| Action Filed: | August 13, 2025 |

## TABLE OF CONTENTS

**Page**


I. INTRODUCTION ........ 1
II. ARGUMENT ........ 3
A. Equitable Estoppel Requires Arbitration of the Claims Against Shopify. ........ 3
1. First Prong: Plaintiff's Claims are Directly Related to and Intertwined with the Underlying Contract. ........ 4
2. Second Prong: Plaintiff Alleges Concerted Misconduct that Directly Relates to Contractual Obligations in the Terms and Privacy Policy. ........ 7
B. A Stay is Warranted if the Claims Against Shopify Cannot be Arbitrated. ........ 9
III. CONCLUSION ........ 13

# TABLE OF AUTHORITIES

Page(s)

## Cases

*Bischoff v. DirecTV, Inc.*,
180 F. Supp. 2d 1097 (C.D. Cal. 2002) ........ 10, 11

*Briskin v. Shopify Inc.*,
No. 21-CV-06269, 2026 WL 161441 (N.D. Cal. Jan. 21, 2026) ........ 6

*Bui v. Northrop Grumman Sys. Corp.*,
No. 15-CV-1397, 2019 WL 13166662 (S.D. Cal. Jan. 29, 2019) ........ 11

*Chartwell Staffing Servs. Inc. v. Atl. Sols. Grp. Inc.*,
No. 8:19-cv-00642, 2020 WL 620294 (C.D. Cal. Jan. 9, 2020) ........ 4

*Chen v. Bank of Am., N.A.*,
No. CV 19-6941, 2020 WL 4561658 (C.D. Cal. Mar. 31, 2020) ........ 12

*Contracting Northwest, Inc. v. City of Fredericksburg, Iowa*,
713 F.2d 382 (8th Cir. 1983) ........ 10

*Franklin v. Cmty. Reg'l Med. Ctr.*,
998 F.3d 867 (9th Cir. 2021) ........ 4

*Golden v. Dameron Hosp. Ass'n*,
No. S-12-0751, 2012 WL 4208779 (E.D. Cal. Sep. 19, 2012) ........ 7

*Goldman v. KPMG, LLP*,
173 Cal. App. 4th 209 (2009) ........ *passim*

*JNK Ent. v. SP Sales & Ent.*,
No. CV-15-01908, 2015 WL 13283845 (C.D. Cal. Sept. 2, 2015) ........ 12

*Kramer v. Toyota Motor Corp.*,
705 F.3d 1122 (9th Cir. 2013) ........ 3, 6, 8

*Last v. M-I, L.L.C.*,
No. 1:20-cv-01205, 2024 WL 551948 (E.D. Cal. Feb. 12, 2024) ........ 4

*Massimo v. Saul*,
817 F. App'x 411 (9th Cir. 2020) ........ 3

*Mundi v. Union Sec. Life Ins. Co.*,
555 F.3d 1042 (9th Cir. 2009) ........ 9

*Oleesky v. Hartford Life & Accident Ins. Co.*,
No. 2:25-CV-00881, 2025 WL 2958841 (C.D. Cal. Aug. 27, 2025) ........ 12

*People v. Hawkins*,
98 Cal. App. 4th 1428 (2002)....................6

*Perez v. Romantix Online, Inc.*,
No. 5:25-cv-02465, 2025 WL 3085786 (N.D. Cal. Oct. 27, 2025)....................6

*Pillar Project AG v. Payward Ventures, Inc.*,
64 Cal. App. 5th 671 (2021)....................4

*Russell v. BMW N. Am., LLC*,
No. 2:22-cv-03299, 2022 WL 18674435 (C.D. Cal. Oct. 14, 2022)....................3

*SolarPark Korea Co. v. Solaria Corp.*,
No. 23-CV-01181, 2023 WL 4983159 (N.D. Cal. Aug. 2, 2023)....................7, 8

*United Commc'ns Hub, Inc. v. Qwest Commc'ns*, Inc.,
46 F. App'x 412 (9th Cir. 2002)....................11, 12

*Wolf v. Langemeier*,
No. 2:09-CV-03086, 2010 WL 3341823 (E.D. Cal. Aug. 24, 2010)....................11

**Statutes**

Cal. Penal Code §§ 502(c)(1)-(2)....................6

**Other Authorities**

Ninth Cir. R. 36-3(c)....................11

## I. INTRODUCTION

Plaintiff does not dispute the existence of a valid and enforceable arbitration agreement requiring her to arbitrate her claims against Defendant Beyond Inc. ("Overstock"). The remaining question is whether Plaintiff's claims against Shopify Inc. ("Shopify") are intertwined with Overstock's Terms & Conditions ("Terms"), the contract that contains the arbitration agreement. The answer is plainly yes, rendering Plaintiffs' claims against Shopify arbitrable as well.

As Plaintiff summarizes, the gravamen of her claims is that both Defendants are "secretly capturing user data." Opp. (Dkt. 18) at 9. Her Complaint (Dkt. 1-4), identifies a litany of data types that the Defendants have purportedly collected jointly, and she repeatedly claims she was never given notice of nor consented to this data collection. Plaintiff does not, by contrast, allege any type of data collected uniquely by either defendant. Plaintiff uses this repeatedly-alleged non-disclosure to assert that she did not provide the requisite consent under the California Invasion of Privacy Act ("CIPA") or Comprehensive Data Access and Fraud Act ("CDAFA"), and maintained a reasonable and legally protected privacy interest under the California Constitution. From the face of Plaintiff's Complaint, and her laser focus on lack of disclosure, the link to Overstock's Terms is obvious: the Terms explicitly incorporated Overstock's Privacy Policy, and it was through the Terms and Privacy Policy that Plaintiff obtained notice of and consented to the data collection at issue.

Far from being "incidental" to the claims, as Plaintiff would have it, the Terms are potentially dispositive. This is true not only of the claims asserted against Overstock, but also of those asserted against Shopify. Plaintiff herself admits that she asserts "essentially the same claims, arising from the same facts, against two different [Defendants]." Opp. at 11. That admission is substantial: it concedes that all of her causes of action stem from allegations of *concerted conduct* by Overstock and Shopify, and confirms that no allegations are unique to a particular Defendant. It is also consistent with the allegations in her Complaint. Yet Plaintiff also insists her "claims

against Shopify" are "distinct," and any of her "references to Overstock's Terms or privacy policy" are now "passing." *Id.* at 9-10. This goes to the heart of equitable estoppel: courts do not allow litigants to flip their positions at will to gain a strategic advantage.

Plaintiff's efforts to avoid estoppel fall flat. She asserts that equitable estoppel cannot apply because her "claims are grounded in statutory and common law duties, not in any contract." Opp. at 6. That is a red herring: California courts routinely apply the doctrine and compel arbitration of claims rooted in statute and common law.

Plaintiff also claims the Complaint's "passing references" to the Terms and Privacy Policy are insufficient, because such references only provide context or rebut a consent defense, but are not offered to establish liability. Opp. at 9. Not only is that a mischaracterization of her Complaint, it misapprehends the law. Far from "passing references," Plaintiff alleged the purported lack of notice and/or consent no fewer than 25 times—appearing in more than 20% of all paragraphs. Compl. ¶¶ 7, 9, 33, 57, 59, 61, 65, 76, 77, 78, 79, 80, 82, 83, 101, 107, 111, 130, 148, 150, 151, 159, 160, 161, 162. Plaintiff is also wrong that the Terms are only relevant to anticipated defenses and not liability (assuming that is relevant to the analysis). For the two claims asserted under California criminal statutes, lack of consent is an element of the cause of action, not a defense. And for the final claim—invasion of privacy under the California Constitution—Plaintiff expressly uses Overstock's inadequate disclosure of data collection to support the affirmative elements of a reasonable and legally protected expectation of privacy. Simply put, in attempting to distance herself from the Terms she agreed to, Plaintiff endeavors to ignore her own allegations and the law.

As for the derivative question of whether the claims against Shopify should immediately proceed in litigation if they are separated from Overstock's arbitration, Plaintiff offers a nonexistent "rule," fashioned from a non-citable Ninth Circuit decision, that fails to address the severe likelihood of inconsistent results that will arise if separate litigation against each Defendant simultaneously proceeds in parallel forums.

The Court should grant Defendants' Motion, compel Plaintiff to arbitrate her claims against Shopify and Overstock, and stay the case pending resolution of those arbitration proceedings.

## II. ARGUMENT

### A. Equitable Estoppel Requires Arbitration of the Claims Against Shopify.

Plaintiff fails to oppose the Defendants' Motion as it relates to her claims against Overstock, leaving only the question whether Shopify may likewise enforce the arbitration agreement as a non-signatory.[1] The answer to that question is yes. The Complaint's allegations satisfy the two *Goldman* prongs, and the army of strawmen erected in Plaintiff's Opposition cannot overcome equitable estoppel. First, her claims against Shopify are "intimately founded in and intertwined with" the contract that contains the arbitration clause—Overstock's Terms and Privacy Policy, which governed the data collection at issue here. *Goldman v. KPMG, LLP*, 173 Cal. App. 4th 209, 221 (2009). Second, Plaintiff's Opposition confirms she "alleges substantially interdependent and concerted misconduct [between] the nonsignatory and another signatory"—she claims both Defendants acted together to obtain private data without prior consent which, again, implicates the Terms and Privacy Policy. *See Kramer v. Toyota Motor Corp.*, 705 F.3d 1122, 1129 (9th Cir. 2013) (citing *Goldman*, 173 Cal. App. 4th at 219).

While a non-signatory to an agreement need only establish one of the two prongs articulated in *Goldman*, both are satisfied here.[2] The Court should grant

---

[1] While Plaintiffs asserts that she "does not concede as to formation, validity, or enforceability" of her arbitration agreement with Overstock, Opp. at 4, she only opposes Defendants' Motion "to the extent it seeks to compel arbitration of Plaintiff's claims against Shopify and to stay those claims pending any arbitration." *Id.* at 1. She offers no argument suggesting the agreement is invalid as to Overstock and has waived any further argument on this issue. *Massimo v. Saul*, 817 F. App'x 411, 413 (9th Cir. 2020) (mem. op.) (finding waiver where party offered "cursory argument without substantive analysis").

[2] Plaintiff wrongly suggests that both *Goldman* prongs must be satisfied for equitable estoppel to apply. Opp. at 2 ("[N]either [prong] operates as a freestanding alternative[.]"), 6 (referring to "the first prong of the equitable estoppel test"). The law is clear that the prongs are disjunctive, and that satisfying either compels estoppel. *See, e.g.*, *Russell v. BMW N. Am., LLC*, No. 2:22-cv-03299, 2022 WL 18674435, at *5

Defendants' Motion to Compel in full.

**1. First Prong: Plaintiff's Claims are Directly Related to and Intertwined with the Underlying Contract.**

The first *Goldman* prong evaluates whether a plaintiff's claims are "intimately founded in and intertwined with" the contract that contains the arbitration clause. *Franklin v. Cmty. Reg'l Med. Ctr.*, 998 F.3d 867, 871 (9th Cir. 2021). Right from the start, Plaintiff incorrectly asserts that because "her claims are grounded in statutory and common law duties, [and] not in any contract," equitable estoppel does not apply. Opp. at 6; *see also id.* at 1, 2, 7. That is wrong; the absence of a breach of contract claim does not defeat equitable estoppel.[3] Instead, the test considers the relationship of the claims alleged, regardless of their source, to the terms of the contract containing the arbitration agreement. *Pillar Project AG v. Payward Ventures, Inc.*, 64 Cal. App. 5th 671, 678 (2021) ("The focus is on the nature of the claims asserted by the plaintiff[.] That the claims are cast in tort rather than contract does not avoid" an estoppel finding. (citation omitted)).

Plaintiff's claims against both Overstock and Shopify are intimately intertwined with Overstock's Terms and the incorporated Privacy Policy. As just one example, Plaintiff argues in her opposition that her claims concern Defendants "secretly capturing user data" as she browsed Overstock's website. Opp. at 9. Of course, data collection can only be a "secret" if Overstock failed to disclose that collection in its Terms and Privacy Policy, which governed data collection and sharing on the Overstock website. Dkt. 18-3 at 2 (Terms) ("We created the Privacy and Security Policy to inform you about

(C.D. Cal. Oct. 14, 2022) (electing to "not address the second" prong because it "finds the first [Goldman prong] to be satisfied").

[3] California courts routinely apply equitable estoppel to compel arbitration of statutory claims against non-signatories. *See, e.g., Franklin*, 998 F.3d at 876 (compelling arbitration of claims under the Fair Labor Standards Act, the California Labor Code, and the California Business and Professions Code); *Last v. M-I, L.L.C.*, No. 1:20-cv-01205, 2024 WL 551948, at *12 (E.D. Cal. Feb. 12, 2024) (compelling arbitration of claims under California Labor Code); *Chartwell Staffing Servs. Inc. v. Atl. Sols. Grp. Inc.*, No. 8:19-cv-00642, 2020 WL 620294, at *5–8 (C.D. Cal. Jan. 9, 2020) (compelling arbitration of misappropriation of trade secret claims).

our collection and use of information we collect when you access the Sites.").

Plaintiff's specific allegations also underscore the centrality of Overstock's Terms and Privacy Policy. She alleges that Overstock places Shopify's cookies on the web browsers of Overstock's visitors. Compl. ¶ 2. That alleged conduct is addressed in the Privacy Policy. Dkt. 18-4 at 5–6, 17–18 (Privacy Policy) (detailing use of cookies). She contends that personal information, such as name, mailing and email addresses, and phone numbers, is among the data wrongfully collected—again covered by the Privacy Policy. Compl. ¶ 4; Dkt. 18-4 at 2–3, 17–18 (detailing collection and disclosure of name, address, email address, and other information). And in support of her contention that Shopify's technology is a "pen register," Plaintiff points to Defendants' alleged collection of information such as geolocation, IP address, device identifiers, and page or product views. Compl. ¶ 25. Once again, the Privacy Policy covers collection of those items. Dkt. 18-4 at 2–3, 17–18 (detailing collection and disclosure of IP address, browser type, navigational information, and other information).

While Plaintiff offers many other contentions regarding Defendants' data collection practices, they share a unifying theme: Plaintiff repeatedly alleges that she was neither provided notice of, nor did she consent to, the alleged data collection by Defendants. Compl. ¶¶ 9 (no notice of cookie use or collection of IP address, location data, or items purchased); 101 (no procurement of consent to collection of IP address, browser information, or related information); 103 (alleging "surreptitious" data collection); 111 (no provision of consent to collect IP address or event data); 148 ("unauthorized" cookie installation); 151 ("undisclosed" third-party sharing); 159–160 (alleging a reasonable privacy interest in data collected "without notice or consent"). This supposed lack of notice and consent is the throughline of each of Plaintiff's claims, and it is necessarily intertwined with Overstock's Terms and Privacy Policy.

Seeking to downplay the centrality of Overstock's Terms to her Complaint, Plaintiff avers that she only made "passing references" to provide context "or rebut a consent defense, not to establish liability." Opp. at 9. But in conceding their relevance

to the issue of consent, Plaintiff further confirms that the Terms are intertwined with her claims under CIPA and CDAFA. Under these statutes, lack of consent is an element of the cause of action, not an affirmative defense. *Perez v. Romantix Online, Inc.*, No. 5:25-cv-02465, 2025 WL 3085786, at *2 (N.D. Cal. Oct. 27, 2025) (lack of consent is an essential element of a CIPA claim); Cal. Penal Code §§ 502(c)(1)-(2) (CDAFA requires knowing access "without permission"); *People v. Hawkins*, 98 Cal. App. 4th 1428, 1438–39 (2002) (CDAFA's "knowingly" requirement applies to all elements of a § 502(c)(2) claim, not just access); *Briskin v. Shopify Inc.*, No. 21-CV-06269, 2026 WL 161441, at *6 (N.D. Cal. Jan. 21, 2026) (the "words of the [CDAFA] statute" and "case law" require plaintiffs to allege "an intent to access without consent"). And as for her remaining claim, which alleges an invasion of the California Constitution's privacy right, Plaintiff herself points to the alleged absence of disclosure and consent to support two affirmative elements of her cause of action: (1) a legally protected privacy interest and (2) a reasonable expectation of privacy. Compl. ¶¶ 159–160. Simply put, it is impossible to adjudicate Plaintiff's claims against Shopify without passing on the validity and scope of Overstock's Terms and Privacy Policy.

The authorities that Plaintiff relies upon are inapposite. She asserts that *Goldman*, 173 Cal. App. 4th at 230, and *Kramer v. Toyota Motor Corp.*, 705 F.3d 1122 (9th Cir. 2013), are "analogous" cases that refused to compel arbitration of claims arising "from independent statutory and constitutional duties." Opp. at 7–8. But the claims implicated in those cases had *zero* connection to the arbitration agreements being enforced. *Goldman* explained that the non-signatory defendants failed to "cite a single term or obligation in the operating agreements that [had] any bearing on the allegations" raised. 173 Cal. App. 4th at 230. And in *Kramer*, the Ninth Circuit noted that the plaintiff's allegations implicated a manufacturer's external "representations about its commitment to repairs and safety—*not any promise in the Purchase Agreement*." 705 F.3d at 1131 (emphasis added). As detailed above, Plaintiff's claims directly relate to Overstock's Terms, and expressly concern promises that Overstock made regarding the

handling of customer data.

Even more dubious are Plaintiff's citations to cases that say nothing about equitable estoppel. Opp. at 5, 8. *Golden v. Dameron Hosp. Ass'n* concerned whether certain allegations fell within the scope of the plaintiff's arbitration agreement; because those civil rights and tort claims were outside of the agreement's scope, the court held that they were "independent claims." No. S-12-0751, 2012 WL 4208779 at *7 (E.D. Cal. Sep. 19, 2012). Defendants have already established, and Plaintiff does not dispute, that the arbitration clause encompasses Plaintiff's claims. Mot. at 10–11. And Plaintiff's related assertion that *SolarPark Korea Co. v. Solaria Corp*., No. 23-CV-01181, 2023 WL 4983159 (N.D. Cal. Aug. 2, 2023) "confirms that arbitration agreements may not be enforced against nonsignatories," Opp. at 5, is also wrong. *SolarPark* contains *no* equitable estoppel analysis. While true that the *SolarPark* court did not compel arbitration of claims asserted against nonsignatory defendants, the nonsignatory defendants did not seek arbitration in the first place. 2023 WL 4983159 at *14 (declining Solaria's motion to compel arbitration for "counts [that] are not directed against Solaria"). Of course, in filing this joint Motion, Defendants seek to compel *all* of Plaintiff's claims to arbitration.

At bottom, it is Plaintiff, not Defendants, who interprets the equitable estoppel doctrine inconsistent with "its intended purpose." Opp. at 8. Her attempts to distance her causes of action from the Terms she agreed to are unconvincing, and the cases she cites either fail to mention equitable estoppel at all, or concerned claims wholly divorced from the arbitration agreements being enforced. The first *Goldman* prong is satisfied.

**2. Second Prong: Plaintiff Alleges Concerted Misconduct that Directly Relates to Contractual Obligations in the Terms and Privacy Policy.**

The second, and alternative, *Goldman* prong evaluates whether the plaintiff "alleges substantially interdependent and concerted misconduct [between] the

nonsignatory and another signatory" that is "founded in or intimately connected with the obligations of the underlying agreement." *Kramer*, 705 F.3d at 1129 (citing *Goldman*, 173 Cal. App. 4th at 219). Plaintiff concedes that her allegations establish that the "Defendants acted in concert," but continues to insist that this joint conduct was not founded in or intimately connected to Overstock's Terms or Privacy Policy. Opp. at 9. Once again, Plaintiff is wrong.

As detailed extensively above, Plaintiff's allegations—which all hinge on the purportedly undisclosed collection of her personal data—are intimately intertwined with the representations and obligations contained in Overstock's Terms and Privacy Policy. Each cause of action Plaintiff raises is asserted generally against both Defendants, and her data collection allegations rarely distinguish between Overstock and Shopify. *See*, *e.g.*, Compl. ¶¶ 132 ("*Defendants* used tracking software . . . to intercept and collect information[.]"); 148 ("Based on *Defendants'* unauthorized installation and storage of third-party tracker cookies . . . *Defendants* knowingly accessed and without permission altered and used Plaintiff's and Class members' data); 162 ("*Defendants'* conduct constituted a serious invasion of privacy[.]") (emphases added). Because of this, Plaintiff cannot seriously dispute that Overstock's Terms and Privacy Policy are central to her claims against Overstock. Because she admits to levelling "the same claims, arising from the same facts" against "Defendants who acted in concert," there is no rational basis for her argument that the Terms and Privacy Policy are "purely incidental" to her claims only as against Shopify. Opp. at 6, 9–10.

Plaintiff's reliance on certain Ninth Circuit and district court cases to rescue her position is misplaced. *SolarPark* turned not on any allegations of "concerted misconduct," Opp. at 5, but on the elementary principle that a movant cannot compel arbitration of claims that are not directed at that movant. 2023 WL 4983159 at *14. The *Kramer* court similarly confirmed that its dispute had no "allegations of collusion or interdependent misconduct for purposes of equitable estoppel," and in any event, the claims bore no relation to any obligations imposed in the arbitration agreement. 705

F.3d at 1133. And the Ninth Circuit's *Mundi* decision turned on three elements not present here: *first*, the plaintiff's claims were "based solely on [the non-signatory's] actions," *second*, "there [were] no allegations of collusion or of misconduct" with the signatory, and *third*, resolving the plaintiff's claims did "not require the examination of any provisions" of the arbitration agreement. *Mundi v. Union Sec. Life Ins. Co.*, 555 F.3d 1042, 1047 (9th Cir. 2009). In contrast to these cases, Plaintiff concedes she has alleged "concerted misconduct," Opp. at 9, regarding data collection. All of that "concerted misconduct" is governed by the Privacy Policy incorporated in Overstock's Terms—the very contract that holds the arbitration clause being enforced in these proceedings.

The satisfaction of either *Goldman* prong is sufficient for the court to apply equitable estoppel. Here, both are met, and the Court should compel arbitration of Plaintiff's claims against Shopify.

### B. A Stay is Warranted if the Claims Against Shopify Cannot be Arbitrated.

If the Court declines to compel arbitration of the claims against Shopify, it should stay proceedings pending resolution of Overstock's arbitration with Plaintiff. Ordinarily, a stay pending arbitration is appropriate as a matter of prudence because it streamlines post-arbitration proceedings and reduces strain on judicial resources. Here, it is also warranted for another reason: Plaintiff's concession that her causes of action concern "essentially the same claims, arising from the same facts, against two different [Defendants]," Opp. at 11, confirm a severe likelihood of inconsistent results should her symmetrical allegations against Overstock and Shopify proceed simultaneously in separate forums.

To start, the Court should not countenance Plaintiff's strawmanning of Defendants' positions concerning a stay. She baldly represents that "Shopify offers no specific argument why a stay . . . would be warranted, other than a generic desire to avoid concurrent litigation." Opp. at 11. To the contrary, Defendants detailed not only the judicial efficiencies that a stay offers, but also the "substantial risk of inconsistent

results" that will arise if Plaintiff's allegations against Overstock and Shopify simultaneously proceed in separate forums. Mot. at 17–19.

That latter point is critical because the coextensive legal and fact questions that permeate Plaintiff's allegations are plain. Each claim amounts to two sides of the same coin: Overstock's disclosure and Shopify's receipt of allegedly private information. The alleged conduct is not distinct among Defendants—Plaintiff herself concedes the Defendants acted in concert. Common factual determinations are thus dispositive of Plaintiff's claims against both Defendants, including: (1) whether Overstock's disclosures obtained adequate consent for the alleged data sharing by Shopify and Overstock; (2) whether Plaintiff had a legally protected privacy interest in the data allegedly shared among Overstock and Shopify; (3) whether Plaintiff retained a reasonable expectation of privacy in light of Overstock's disclosures; and (4) whether Defendants' allegedly concerted conduct "constituted a serious invasion of privacy that would be highly offensive to a reasonable person," Compl. ¶ 162. Under these circumstances, "considerations of judicial economy and avoidance of confusion and possible inconsistent results [] militate in favor of staying the entire action." *Bischoff v. DirecTV, Inc.*, 180 F. Supp. 2d 1097, 1114–15 (C.D. Cal. 2002) (quoting *Contracting Northwest, Inc. v. City of Fredericksburg, Iowa*, 713 F.2d 382, 387 (8th Cir. 1983)).

Plaintiff also vaguely contends that concurrent proceedings are "preferable from the standpoint of fairness." Opp. at 12. But she only takes issue with what a stay does: put the litigation on hold pending resolution of the arbitration. She does not identify any specific prejudice to her or absent class members (assuming this matter eventually obtains certification) that flows from awaiting the results of the arbitration. By contrast, the cost of inefficient, or potentially unnecessary, proceedings to the Court and the parties is concrete. Relatedly, Plaintiff does not explain how proceeding with the litigation would "incentivize a more efficient global resolution of the dispute." Opp. at 12. Indeed, because Plaintiff does not oppose arbitration with Overstock, aspirations of "global resolution" in this court are nonsensical. Any resolution must be separately

obtained unless Plaintiff brings a single action in arbitration against both Defendants.

Plaintiff also asserts that "there is minimal risk of inconsistent outcomes because the claims against Shopify turn on Shopify's own conduct and legal duties." Opp. at 12. That assertion is built on a truism: all claims against any defendant turn on that defendant's individual conduct. But in fact, district courts regularly stay claims pending arbitration in these circumstances, because the factual and legal determinations that cross-cut similar claims against defendants create a severe likelihood of inconsistent results. *See, e.g.*, *Bui v. Northrop Grumman Sys. Corp*., No. 15-CV-1397, 2019 WL 13166662, at *2 (S.D. Cal. Jan. 29, 2019) (staying a representative claim pending arbitration of individual claims because the claims all turned on whether Plaintiff was an "aggrieved employee"); *Bischoff*, 180 F. Supp. 2d at 1114 ("[A] stay of all issues, and as to all parties, is warranted when questions of fact common to all would be involved in both the litigation and the arbitration."). And the risk of inconsistent outcomes is particularly acute here because the dual proceedings that Plaintiff envisions will contain "essentially the same claims, arising from the same facts, against two different wrongdoers." Opp. at 11; *Wolf v. Langemeier*, No. 2:09-CV-03086, 2010 WL 3341823, at *8 (E.D. Cal. Aug. 24, 2010) (staying entire case when allegations against arbitrating and non-arbitrating parties were "the same claims" arising from the same operative facts).

Plaintiff tellingly does not rebut any of Defendants' authority. Instead, she insists there is a Ninth Circuit "rule" that a stay "is warranted only where the arbitrable claims predominate, or where the outcome of the nonarbitrable claims will depend on the arbitrator's decision." Opp. at 3, 10 (quoting *United Commc'ns Hub, Inc. v. Qwest Commc'ns*, Inc., 46 F. App'x 412, 415 (9th Cir. 2002) (non-citable)). But *United Communications*, an unpublished decision issued before 2007, "may not be cited to the courts of this circuit[.]" Ninth Cir. R. 36-3(c). Notwithstanding the case's non-citable status, the portions that Plaintiff cherry-picks are dicta. The panel made no determination as to whether any non-arbitrable claims could be stayed; instead, it

"allow[ed] the district court to exercise its sound discretion in determining whether or not to proceed in the interim[.]" *United Communications*, 46 F. App'x at 415. And the dicta itself is anything but a "rule": the court merely "note[d] a preference for proceeding with the non-arbitrable claims when feasible," and expressed "approv[al] of the reasoning of another district court" that suggested weighing the predominance of claims.[4] *Id*.

The three district court cases Plaintiff cites to bolster her "rule," Opp. at 11, are also distinguishable on other grounds. The district courts in *JNX Entertainment* and *Chen* declined to stay the consideration of non-arbitrable claims because they were *distinct causes of action from those requiring arbitration*. *JNK Ent. v. SP Sales & Ent*., No. CV-15-01908, 2015 WL 13283845, at *1 (C.D. Cal. Sept. 2, 2015) (compelling arbitration of copyright claims, immediately proceeding with tort and contract claims[5]); *Chen v. Bank of Am., N.A.*, No. CV 19-6941, 2020 WL 4561658, at *2–*3 (C.D. Cal. Mar. 31, 2020) (declining to stay a California Unfair Competition Law claim after fraud claims against a separate defendant required arbitration). And while Plaintiff proclaims that the *Oleesky* court "refused to stay the court proceedings against the insurer," Opp. at 11, she fails to disclose that the insurer *did not seek arbitration or a stay at all*. *Oleesky v. Hartford Life & Accident Ins. Co*., No. 2:25-CV-00881, 2025 WL 2958841, at *4 (C.D. Cal. Aug. 27, 2025) ("Though LTD Plan has requested that the [entire] action be stayed, it has not demonstrated why expanding the stay to encompass the claims against Hartford is appropriate."). At bottom, there is nothing analogous about Plaintiff's authority to the instant case.

---

[4] Indeed, one of Plaintiff's cases confirms there is no "rule" mandating simultaneous and parallel proceedings; instead, "the district court has discretion to stay proceedings even when the outcome of the arbitration is not necessarily controlling of the action before the court." *Chen v. Bank of Am., N.A.,* No. CV 19-6941, 2020 WL 4561658, at *2 (C.D. Cal. Mar. 31, 2020) (citation omitted).

[5] Plaintiff notes that the *JNK Entertainment* court "compelled arbitration of certain contract-based claims." Opp. at 11. That is misleading. Only one breach of contract claim, raised "against Defendant SP Distribution," was sent to arbitration. *JNK Ent*., 2015 WL 13283845, at *6. The other breach of contract claim, against "Defendant Crystal Edge," proceeded immediately because Crystal Edge neither sought an arbitration nor a stay. *Id.* (noting that the claim against Crystal Edge "is not brought against the Movant (Defendant SP Distribution)").

## III. CONCLUSION

The Motion should be granted, Plaintiff Connie Johnson should be compelled to arbitration, and the proceedings should be otherwise stayed pending resolution of these arbitrations.

Dated: February 17, 2026

COOLEY LLP

By: */s/ Benedict Hur*
Benedict Hur

Attorney for Defendant
SHOPIFY INC.

Dated: February 17, 2026

CONRAD | METLITZKY | KANE LLP

By: */s/ Grace Yang* (as authorized on February 17, 2026)
Grace Yang

Attorney for Defendant
BEYOND, INC., DBA
OVERSTOCK.COM